Parker M. NIELSON, Plaintiff
and Appellee,

v.

Dale GURLEY, Defendant and Appellant.

No. 930327–CA.

Court of Appeals of Utah.

Nov. 21, 1994.

Rehearing Denied Jan. 30, 1995.

Dennis C. Ferguson, Salt Lake City, for appellant.

Daniel D. Darger, Salt Lake City, for appellee.

Before GREENWOOD, DAVIS and ORME, JJ.

## OPINION

ORME, Associate Presiding Judge:

Dale Gurley, an employee of the State of Utah, appeals the trial court's judgment in favor of Parker M. Nielson. We vacate the judgment for lack of subject matter jurisdiction.

## FACTS

Nielson trains hunting dogs as a hobby. To facilitate his hobby, Nielson obtained a permit from the Utah Division of Wildlife Resources (DWR) and negotiated a special use lease agreement with the State of Utah, Division of State Lands and Forestry, for the purpose of "releasing and propagating game-birds for hunting dog training." During the morning of September 8, 1990, Nielson was training his dogs on the leased property with chukar partridges. Nielson completed his activities and left the area around 10:00 a.m.

On the same day, Gurley, a wildlife conservation officer employed by DWR, was patrolling in the area of Nielson's leasehold, checking on hunters on the opening weekend of the hunting season for grouse, chukar, and cottontail rabbit. That afternoon, Gurley forcibly entered a locked bird pen belonging to Nielson. The pen was part of Nielson's licensed game farm. As a result of Gurley's conduct, the chukar within the pen escaped. Gurley then dismantled a device designed to recapture gamebirds and rendered the pen unusable. Gurley also confiscated bird feed, feeders, identification bands, and watering devices. Gurley did not secure a warrant and did not make an arrest or issue a citation.

On September 18, 1990, a mere ten days after the incident, Nielson, a licensed attorney, filed a complaint alleging that Gurley converted his property, tortiously interfered with his contract with the State, and defamed him.[1] Upon being served, Gurley prepared a report of the incident and fabricated a citation against Nielson, later falsely claiming in his affidavit in opposition to Nielson's motion for partial summary judgment that he mailed the citation to Nielson. Gurley admitted at trial that he had not actually issued a citation to Nielson, nor had he ever intended to do so.

On April 9, 1991, Nielson filed a motion for partial summary judgment. The trial court granted the motion, holding that Gurley had acted without probable cause and that his conduct was unlawful. The trial court also granted Nielson's motion to strike Gurley's affidavit because it was "riddled with untruths."

Subsequently, Nielson filed a second action against Gurley. The two actions were consolidated, as both involved the same parties, the same transaction, the same damages, and identical allegations, except that the second complaint sought an injunction to prevent defendant from interfering with plaintiff's dog-training activities. The case proceeded to trial, after which the court entered judgment against Gurley for $2300, found to be the replacement value of Nielson's property, plus $15,000 in attorney fees pursuant to Utah's bad faith statute. *See* Utah Code Ann. § 78–27–56(1) (1992).

Gurley asks us to reverse the trial court's ruling on numerous grounds, including lack of subject matter jurisdiction, governmental immunity, misinterpretation of Utah Wildlife statutes and regulations, improper entry of

---

1. Nielson did not pursue the defamation claim at trial.

summary judgment, improper award of attorney fees to a pro se litigant, and improper award of bad faith attorney fees.[2]

## TIMELINESS OF APPEAL

Before reaching the merits of Gurley's appeal, we must first determine whether we have jurisdiction over the appeal. Nielson argues that Gurley failed to file notice of appeal within thirty days following the trial court's entry of final judgment, and that we must therefore dismiss this appeal for lack of jurisdiction. *See* Utah R.App.P. 4(a).

Of course, we cannot take jurisdiction over an untimely appeal. *Nelson v. Stoker,* 669 P.2d 390, 392 (Utah 1983). In fact, "[w]hen a matter is outside the court's jurisdiction it retains only the authority to dismiss the action." *Varian–Eimac, Inc. v. Lamoreaux,* 767 P.2d 569, 570 (Utah App.1989). However, "[t]he right to an appeal is a valuable and constitutional right and ought not to be denied except where it is clear the right has been lost or abandoned." *Adamson v. Brockbank,* 112 Utah 52, 60, 185 P.2d 264, 268 (1947).

The chronology of the proceedings below is critical in determining whether we have jurisdiction to hear this appeal. On June 24, 1991, the trial court entered partial summary judgment in favor of plaintiff on the issue of liability. On October 21 and 22, 1992, trial was held on the remaining issues of conversion, interference with contract, and damages. On December 18, 1992, the trial court, by memorandum decision, awarded plaintiff $2300 in damages and $15,000 for attorney fees pursuant to Utah Code Ann. § 78–27–56(1) (1992). On the same day, by minute entry, the trial court indicated it would "retain jurisdiction over this matter until the final documents resolving this case are in place."

█ Apparently unclear as to whether the memorandum decision constituted a final judgment—a peculiar worry in view of the explicit language of the minute entry—Gurley filed a notice of appeal from the memorandum decision on December 21, 1992. On

January 7, 1993, the trial court entered judgment awarding plaintiff $2300 in damages and $15,000 in attorney fees. On January 27, the trial court amended the judgment to recite that Nielson was also entitled to his costs. Gurley filed a second notice of appeal, from the amended judgment, on February 26, 1993. Thus, the notice of appeal Gurley filed on February 26, 1993, was filed within thirty days from the date the court entered the amended judgment, but was not filed within thirty days from the date of the original judgment. Therefore, the first question presented by Nielson's motion to dismiss is whether the thirty-day period for Gurley to file his notice of appeal began running as of the date the court entered the original judgment or as of the date the court amended the judgment.

In Utah, the rule of law governing this issue is clear:

[W]here a belated entry merely constitutes an amendment or modification not changing the substance or character of the judgment, such entry is merely a nunc pro tunc entry which relates back to the time the original judgment was entered, and does not enlarge the time for appeal; but where the modification or amendment is in some material matter, the time begins to run from the time of the modification or amendment.

*Adamson,* 185 P.2d at 268. *Accord In re Marriage of Mullinax,* 292 Or. 416, 639 P.2d 628, 633–34 (1982). *See also Federal Trade Comm'n v. Minneapolis–Honeywell Regulator Co.,* 344 U.S. 206, 211–12, 73 S.Ct. 245, 248–49, 97 L.Ed. 245 (1952) (fact that Court amends judgment in immaterial way does not extend time within which appellant can seek review); C.S. Patrinelis, Annotation, *Amendment of Judgment as Affecting Time for Taking or Prosecuting Appellate Review Proceedings,* 21 A.L.R.2d 285, 287, 295–304 (1952) (summarizing cases addressing calculation of time for appeal based on whether amendment to judgment was material or simply clerical).

---

**2.** Because we hold that the trial court lacked subject matter jurisdiction over this dispute, we

do not reach the other issues Gurley raises on appeal.

In the instant case, the modification or amendment was purely clerical in nature. The trial court did not enlarge the award of attorney fees; instead, the court merely clarified its order by indicating that Nielson was entitled to his taxable costs in addition to the $15,000 attorney fee award. This amendment was not of sufficient importance to change the character of the judgment. It did not affect any substantive rights running to the litigants. Indeed, the court's amendment to the judgment was completely unnecessary because costs are awarded as a matter of course to the prevailing party unless the court *otherwise* orders. Utah R.Civ.P. 54(d)(1). The effect of the amendment did not create a new judgment for purposes of determining the timeliness of appeal, and the time in which Gurley could appeal commenced to run from the date of the original judgment.[3]

■ We next consider whether Gurley timely filed notice of appeal from the trial court's original judgment. The trial court issued its memorandum decision on December 18, 1992. On December 21, 1992, Gurley prematurely filed his first notice of appeal. The trial court entered judgment on January 7, 1993. Thus, Gurley filed a notice of appeal after the trial court announced its decision, but prior to the court's entry of judgment. Rule 4(c) anticipates just such a scenario and states that

> [e]xcept as provided in paragraph (b) of this rule, a notice of appeal filed after the announcement of a decision, judgment, or order but before the entry of the judgment or order of the trial court shall be treated as filed after such entry and on the day thereof.

Utah R.App.P. 4(c). Therefore, under Rule 4(c), we consider Gurley's notice of appeal to have been filed as of January 7, 1993—the date the court entered its judgment—*unless* the case is governed by the exception set forth in Rule 4(b).

Rule 4(b) states:

> If a *timely* motion under the Utah Rules of Civil Procedure is filed in the trial court by

any party (1) for judgment under Rule 50(b); (2) under Rule 52(b) to amend or make additional findings of fact, whether or not an alteration of the judgment would be required if the motion is granted; (3) under Rule 59 to alter or amend the judgment; or (4) under Rule 59 for a new trial, the time for appeal for all parties shall run from the entry of the order denying a new trial or granting or denying any other such motion.... A notice of appeal filed before the disposition of any of the above motions shall have no effect. A new notice of appeal must be filed within the prescribed time measured from the *entry of the order* of the trial court disposing of the motion as provided above.

Utah R.App.P. 4(b) (emphasis added).

In the instant case, by motion served on January 21, 1993, Gurley sought to set aside the judgment entered on January 7, 1993, and the findings of fact and conclusions of law contained therein. However, Gurley's motion did not trigger the exception to Rule 4(c) provided for in Rule 4(b). First, Gurley's motion was not timely, as he served it more than ten days after the court entered judgment. *See* Utah R.Civ.P. 59(e). Second, Gurley withdrew his motion to set aside on February 26, 1993, and thus the court neither granted nor denied his motion and did not enter an order which, under Rule 4(b), would trigger a new thirty-day appeal time.

For the foregoing reasons, we have jurisdiction over this appeal.

## SUBJECT MATTER JURISDICTION

Gurley contends that the trial court lacked subject matter jurisdiction over this case because Nielson failed to comply with the notice provisions of the Utah Governmental Immunity Act. *See* Utah Code Ann. §§ 63–30–11, –12 (1993). Nielson counters Gurley's assertion with a three-prong argument. First, Nielson contends that his action against Gurley did not invoke the requirements of the Governmental Immunity Act because Nielson accused Gurley of wrongdo-

---

3. Even if we are incorrect, and the appeal time runs from entry of the amended judgment, we would still have jurisdiction over this appeal be- cause Gurley filed a notice of appeal within thirty days from entry of the amended judgment.

ing in his individual capacity, as opposed to suing him for actions taken within the scope of his State employment. (In the vernacular employed at oral argument, Nielson contends this is routine litigation between "ordinary guys.") Second, Nielson contends that whatever immunity Gurley otherwise would have has been waived. Finally, Nielson argues that even if the Governmental Immunity Act applies to this action, he fully complied with the notice provisions necessary to maintain his action.

### A. Action Under Color of Authority

■ Obviously, a plaintiff can sue a State employee acting in his or her individual capacity without implicating the Utah Governmental Immunity Act. State employees, like other citizens, engage in a myriad of personal and off-duty activities for which they, like other citizens, may be subject to suit. The Utah Governmental Immunity Act recognizes this fact and only applies to an action against a state employee "for an act or omission occurring during the performance of his duties, within the scope of employment, or under color of authority." Utah Code Ann. §§ 63–30–11(2), –12 (1993).

However, in the instant case, it is clear that the conduct of which Nielson complains was conduct that Gurley engaged in while performing his duties as a State employee and was done under the color of that authority. Nielson based his original complaint against Gurley on allegations that Gurley failed to comply with regulations pertaining to "[a]ny peace officer or special function officer." Moreover, in his answer to the complaint filed on October 2, 1990, Gurley raised governmental immunity in several affirmative defenses, invoking numerous statutory provisions of the Governmental Immuni-

ty Act, including those provisions that require a plaintiff to provide proper notice. Therefore, Nielson was aware, even from the initial stages of this litigation,[4] that Gurley claimed to have seized his property under color of the State's authority. Given this knowledge, Nielson will not now be heard to complain that the Governmental Immunity Act does not apply because Nielson only meant to sue Gurley as an ordinary individual, not for anything he did in the course of his employment by the State.

### B. Notice a Precondition to Maintaining Action

■ The failure to comply with the notice requirements of the Utah Governmental Immunity Act deprives the trial court of subject matter jurisdiction, and therefore compliance with the act is a precondition to maintaining an action "against the state, or against its employee for an act or omission occurring during the performance of his duties, within the scope of employment, or under color of authority." Utah Code Ann. § 63–30–12 (1993). *See id.* § 63–30–11; *Lamarr v. Utah State Dep't of Transp.*, 828 P.2d 535, 540–41 (Utah App.1992). In *Lamarr,* we held that a suit against the State cannot be maintained unless proper notice is given. 828 P.2d at 542. Moreover, we pointed out that because improper notice divests the court of subject matter jurisdiction, failure to provide proper notice of claim is a non-waivable defense that any party, or the court, can raise at any time. *Id.* at 540.

Nielson, like the plaintiff in *Lamarr,* claims the notice issue is not properly before this court. However, in *Lamarr* we rejected the plaintiff's argument that a state subdivision had waived compliance with the notice

---

4. Such awareness became increasingly unavoidable as the action progressed. On April 22, 1991, Gurley filed an affidavit expressly stating that he dismantled the bird pen pursuant to his authority as a *law enforcement officer*. Moreover, Gurley attached a citation to his affidavit alleging Nielson violated laws and regulations pertaining to the taking, possession, and releasing of wild game birds. Although Gurley's affidavit was stricken from the record as being "riddled with untruths," it did serve to put Nielson on actual notice that Gurley claimed to have acted as a state employee. Indeed, when Nielson filed yet a third action, one alleging civil rights violations that was later removed to federal court, he expressly recognized that "[t]he conduct of . . . Gurley was performed under color of various statutes, ordinances, regulations, customs or usages of the State of Utah." Therefore, Nielson's claim that he sued Gurley in his individual capacity, as an ordinary citizen, and was unaware that Gurley acted as a wildlife enforcement officer, is untenable.

provisions of the Governmental Immunity Act. We expressly stated:

> Lamarr asserts the notice issue is an affirmative defense that was not pleaded in the answer, and thus Rule 8(c) of the Utah Rules of Civil Procedure precludes UDOT from raising it in its summary judgment motion and on appeal. Lamarr notes UDOT never mentions the term "notice of claim" in its answer. He further argues UDOT did not request the court to rule on this issue on summary judgment and therefore we cannot consider it on appeal. *Lamarr's argument, however, misconstrues the nature of the statutory notice of claim requirement.* Lamarr erroneously asserts the notice of claim provision is a statute of limitation. Rather, *the supreme court has held the statutory notice requirement is a jurisdictional requirement* and a precondition to suit. *See Madsen v. Borthick,* 769 P.2d 245, 250 (Utah 1988).

*Lamarr,* 828 P.2d at 540 (emphasis added). Accordingly, this part of Nielson's waiver argument fails.

■ Nielson further contends that under the substantive provisions of the Governmental Immunity Act, the sovereign has waived Gurley's immunity. Nielson points to two provisions in the Governmental Immunity Act that he claims divest Gurley of immunity from suit. Section 63–30–5 states:

> Immunity from suit *of all governmental entities* is waived as to any contractual obligation. Actions arising out of contractual rights or obligations shall not be subject to the requirements of [various provisions, including the notice requirement].

Utah Code Ann. § 63–30–5(1) (1993) (emphasis added). Nielson contends that his claims against Gurley arose out of two contracts with the State—his lease with the State and his permit to operate his dog-training activities. Therefore, Nielson argues that he did not need to provide notice of claim in order to maintain his action.

However, Nielson ignores the operative language of the statute that he claims negates the requirement to provide notice.

While the statutes that *extend* sovereign immunity include both entities and individual state employees, *see* Utah Code Ann. §§ 63–30–11(2), –12 (1993), section 63–30–5 waives the notice requirements and substantive immunity for claims arising from "any contractual obligation" only as concerns "all governmental entities." Section 63–30–5 does not waive the notice requirements for a suit against a state *employee* "for any act or omission occurring during the performance of his duties, within the scope of employment, or under color of authority," Utah Code Ann. §§ 63–30–11(2), –12 (1993), notwithstanding a nexus between the claim asserted and "any contractual obligation." Thus, the waiver of immunity applicable to contract claims is not applicable to Nielson's action against Gurley.

■ Finally, Nielson contends that the Governmental Immunity Act does not apply because Gurley acted with malice and thus the sovereign has waived Gurley's immunity. It is true that if the employee acted or failed to act through malice or fraud, the employee cannot successfully invoke governmental immunity as an affirmative defense. *See* Utah Code Ann. § 63–30–4(3)(b) (1993). However, Nielson confuses the scope of the notice requirement with the extent of substantive sovereign immunity protection. Complying with the notice provisions of the Governmental Immunity Act is a *jurisdictional* requirement and a precondition to suit, and is in no way co-extensive with the substantive provisions contained within the Governmental Immunity Act which insulate the sovereign and its operatives from liability. *See Madsen v. Borthick,* 769 P.2d 245, 250 (Utah 1988); *Lamarr,* 828 P.2d at 540–41. If, as Nielson argues, a plaintiff need only provide notice in those situations when the sovereign may properly invoke immunity under the substantive provisions of the Act, the notice requirement would be meaningless[5] because the substantive provisions of sovereign immunity would fully protect the sovereign and its operatives in any event.

We conclude that Gurley's immunity was not waived and that Nielson had to comply with the notice provisions of the Governmen-

---

5. We have recently discussed the several purposes the notice requirement is intended to serve. *See Brittain v. State,* 882 P.2d 666, 671 (Utah App.1994).

tal Immunity Act in order to maintain his action against Gurley.

### C. Failure to Comply with Notice Provisions

■ In order to comply with the Utah Governmental Immunity Act,

[a]ny person having a claim for injury against a governmental entity, or against an employee for an act or omission occurring during the performance of his duties, within the scope of employment, or under color of authority shall file a written notice of claim with the entity *before* maintaining an action, regardless of whether or not the function giving rise to the claim is characterized as governmental.

Utah Code Ann. § 63–30–11(2) (1993) (emphasis added).

Moreover, Utah Code Ann. § 63–30–12 (1993) provides that

[a] claim against the state, or against its employee for an act or omission occurring during the performance of his duties, within the scope of employment, or under color of authority, is barred unless notice of claim is filed with the attorney general and the agency concerned within one year after the claim arises, or before the expiration of any extension of time granted under Section 63–30–11, regardless of whether or not the function giving rise to the claim is characterized as governmental.

In the instant case, Nielson's claim arose on September 8, 1990, when he discovered Gurley had dismantled and seized his property. Nielson filed his first complaint against Gurley on September 18, 1990. However, Nielson did not file a notice of claim with the Attorney General or the Division of Wildlife Resources prior to initiating this legal action. On October 2, 1990, Gurley answered Nielson's complaint and, by referring to the statutory provisions concerning notice, raised

plaintiff's failure to comply with those provisions as an affirmative defense. On June 24, 1991, the trial court entered partial summary judgment against Gurley on the issue of liability. Nielson filed a second action against Gurley based on the same conduct in September of 1991, almost one year after the cause of action arose. The two actions were consolidated on August 13, 1992.

On September 3, 1991, within the one-year period prescribed by statute, Nielson apparently endeavored to comply with the notice requirement by sending a copy of his complaint and notice of claim to the Division of Wildlife Resources. However, to comply with the notice requirement, Nielson was also required to send notice of claim to the Attorney General within the one-year period. *See* Utah Code Ann. § 63–30–12 (1993); *Lamarr,* 828 P.2d at 541. It was not until December 4, 1991, that Nielson sent notice of claim to the Attorney General.[6] The notice was deficient, however, in that it came more than one year after the claim arose, and such deficiency was fatal to the trial court's jurisdiction. *See, e.g., Richards v. Leavitt,* 716 P.2d 276, 277 (Utah 1985) (per curiam); *Sears v. Southworth,* 563 P.2d 192, 194 (Utah 1977).

### CONCLUSION

We have jurisdiction of Gurley's appeal. We conclude that Nielson's failure to provide timely notice of claim as required by Utah Code Ann §§ 63–30–11, –12 (1993) deprived the trial court of subject matter jurisdiction over Nielson's claims against Gurley. Accordingly, we vacate the trial court's judgment.

DAVIS and GREENWOOD, JJ., concur.

---

6. Nielson contends that he complied with the notice requirements by serving notice of claim on both the Attorney General and the DWR within the one-year period. However, the record does not support Nielson's claim. In order to have complied with the notice requirements, Nielson must have filed two notices of claim—one with the agency concerned and the second with the Attorney General—by September 8, 1991. *See generally Brittain v. State,* 882 P.2d 666 (Utah App.1994). While the record does indicate that

Nielson timely served notice of claim on Gurley and DWR, the record is devoid of proof of service of any timely pre-suit notice on the Attorney General. Nielson claims he sent a copy of the proposed complaint to the Attorney General on August 14, 1991. However, Nielson can point to nothing in the record to support this claim and readily admits that the December 4, 1991, notice he sent to the Attorney General was done because he "anticipat[ed] that the ... first and second notices were defective."