2000 Utah Ct. App. 104

Shari Lynn CRISMAN, Mark Crisman, and Paul Howard Peters, Plaintiffs and Appellants,

v.

Ted HALLOWS, Defendant and Appellee.

No. 990698–CA.

Court of Appeals of Utah.

April 13, 2000.

Boyd Kimball Dyer, Salt Lake City, for Appellants.

Paul Howard Peters, Park City, Appellant Pro Se.

Jan Graham, Attorney General and Nancy L. Kemp, Assistant Attorney General, Salt Lake City, for Appellee.

Before Judges GREENWOOD, JACKSON, and DAVIS.

## OPINION

DAVIS, Judge:

¶1 Plaintiffs Shari Lynn Crisman, Mark Crisman, and Paul Howard Peters appeal the trial court's entry of summary judgment in favor of defendant Ted Hallows. Because there existed a genuine issue of material fact as to whether Hallows acted within the scope of his employment for the State of Utah, thus precluding summary judgment, we reverse.

## BACKGROUND

¶2 " 'In reviewing a grant of summary judgment, we consider the facts in the light most favorable to the nonmoving party ....' " *Hebertson v. Bank One, Utah, N.A.*, 1999 UT App 342, ¶2, 995 P.2d 7 (quoting *Parker v. Dodgion*, 971 P.2d 496, 496–97 (Utah 1998)).

¶3 Shari Lynn and Mark Crisman were owners of a dog named Trooper. Because the Crismans were residents of California and California required dog immunizations to

which Trooper had a prior adverse reaction, the Crismans sent Trooper to live in Utah with Paul Peters, Shari Crisman's brother. Paul Peters already had two dogs, named Kiva and Cody, which he kept with Trooper in a fenced pen located in his fenced yard.

¶ 4 On April 24, 1996, Kiva and Trooper managed to escape their enclosures. At some point after Kiva and Trooper left Peters's property, Hallows, a neighbor of Peters and a thirteen-year employee of the Division of Wildlife Resources (DWR) who then worked at a fish hatchery in Kamas, saw the dogs running loose and shot them. In so doing, Hallows killed Trooper and wounded Kiva. When Peters returned home from work, he discovered Kiva's injuries and took the dog to a veterinarian. Mindful of a prior warning from a neighbor, Gary Rice, that if Peters's dogs ran loose Hallows might shoot them, Peters also called Hallows and accused him of shooting Kiva. During that conversation, Hallows admitted he shot Kiva and killed Trooper and stated that he did so because the dogs had been disturbing his garden and horses.

¶ 5 Hallows's account differed. According to him, he received a telephone message from Rice, who stated that he observed dogs chasing deer on a hillside above the hatchery. Hallows then witnessed Kiva and Trooper chasing an elk herd, retrieved a rifle from his home, caught up to the dogs, and shot them.[1]

¶ 6 On September 14, 1996, Shari Lynn and Mark Crisman filed a notice of claim with the Utah Attorney General, which was denied on December 13, 1996, and on December 24, 1997, the Crismans and Peters filed this action seeking damages arising from Hallows's shootings.[2] Hallows moved for summary judgment, arguing that his actions were authorized by Utah Code Ann. § 18–1–3 (1998) and, because he acted within the scope of his employment, the Utah Govern-

mental Immunity Act (Immunity Act), *id.* §§ 63–30–1 to –38 (1997 & Supp.1999), applied and barred plaintiffs' claims. In particular, Hallows asserted that suit by any of plaintiffs was untimely under the Immunity Act's statute of limitations and Peters's action was further barred for failure to provide a notice of claim. Plaintiffs responded by arguing that because Hallows acted outside the scope of his employment, the Immunity Act did not apply. In support of their position, plaintiffs relied on Shari Lynn Crisman's deposition testimony that Trooper was too infirm to be able to chase deer and submitted Peters's affidavit, wherein he recounted that Hallows "admitted that . . . he had shot the dogs because they had disturbed his garden and bothered his horses."

¶ 7 The trial court granted summary judgment in favor of Hallows. In so doing, however, the court purported to make findings of fact which included that (1) Hallows "observed the dogs chasing deer and elk;" (2) he "shot the dogs" "[a]fter personally observing the dogs chasing deer and elk;" and (3) he "act[ed] within the scope of his employment when he shot the dogs." The court thus concluded that the Immunity Act applied, any action by the Crismans' was barred as untimely, and Peters's action was barred for failure to provide a notice of claim. Plaintiffs appeal.

## ISSUE AND STANDARD OF REVIEW

¶ 8 Plaintiffs argue that because there existed a genuine issue of material fact as to whether Hallows acted within the scope of his employment, the trial court erred in so concluding as a matter of law and in determining that the Immunity Act applied and barred their claims. " ' "Summary judgment is appropriate only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." [3]

---

1. Hallows defended his conduct by relying on section 18–1–3 of the Utah Code, which provides that "[a]ny person may kill a dog while it is attacking, chasing or worrying any . . . species of hoofed protected wildlife." Utah Code Ann. § 18–1–3 (1998).

2. Although the notice of claim was sent by Peters, who is an attorney, it was sent only in his

representative capacity as counsel for the Crismans. However, all three parties were named plaintiffs in this action.

3. Because on motion for summary judgment the court does not make findings of fact, but rather determines only whether the movant is entitled to judgment as a matter of law based upon the undisputed material facts, we reject defendant's

Because the question of whether summary judgment is appropriate is a question of law, we accord no deference to the trial court.' " *Hebertson,* 1999 UT App 342 at ¶ 6, 995 P.2d 7 (quoting *Parker,* 971 P.2d at 497 (quoting *Higgins v. Salt Lake County,* 855 P.2d 231, 235 (Utah 1993))).

## ANALYSIS

¶ 9 As this court previously explained,

[A] plaintiff can sue a State employee acting in his or her individual capacity without implicating the Utah Governmental Immunity Act. State employees, like other citizens, engage in a myriad of personal and off-duty activities for which they, like other citizens, may be subject to suit. The Utah Governmental Immunity Act recognizes this fact and only applies to an action against a state employee "for an act or omission occurring during the performance of his duties, within the scope of employment, or under color of authority."

*Nielson v. Gurley,* 888 P.2d 130, 134 (Utah Ct.App.1994) (quoting Utah Code Ann. §§ 63–30–11(2), –12 (1993)).

■ ¶ 10 Hallows argues that compliance with the Immunity Act's notice and statute of limitations requirements are jurisdictional whenever a defendant asserts his tortious conduct occurred within his capacity as a governmental employee. We disagree. As plaintiffs correctly point out, the Immunity Act's application turns on what in fact occurred, not on what a defendant asserts occurred. Thus, while failure to comply with the Immunity Act applies to claims for conduct by governmental employees actually occurring in that capacity, it is not invoked for the personal tortious conduct of a person who happens to also be a governmental employee merely because he so asserts.[4] *See Spoons v. Lewis,* 1999 UT 82, ¶ 7, 987 P.2d 36 ("If [plaintiff] can maintain any viable claims [for a governmental employee's conduct] occur-

ring outside the performance of [his or] her duties, not within the scope of [his or] her employment, and not under color of authority, the Governmental Immunity Act's notice of claim provisions would not apply."). Consequently, we conclude that notwithstanding their admitted failure to comply with the Immunity Act's notice of claim and statute of limitations requirements, plaintiffs may maintain an action against Hallows for conduct outside the scope of his employment. *See id.* (holding that although plaintiff failed to provide notice of claim, dismissal was premature when complaint supported action for conduct outside scope of employment).

¶ 11 "Whether an employee's conduct falls within the scope of employment is ordinarily a question of fact," and thus should be determined by the trier of fact. *Jackson v. Righter,* 891 P.2d 1387, 1391 (Utah 1995); *see Birkner v. Salt Lake County,* 771 P.2d 1053, 1057 (Utah 1989); *D.D.Z. v. Molerway Freight Lines, Inc.,* 880 P.2d 1, 5 (Utah Ct.App.1994).

■ ¶ 12 Plaintiffs assert there was a genuine issue of fact as to whether Hallows acted outside the scope of his DWR employment when he shot the dogs. " 'If the employee acts "from purely personal motives . . . in no way connected with the employer's interests" ' " he has acted outside the scope of his employment. *D.D.Z.,* 880 P.2d at 5 (quoting *Birkner,* 771 P.2d at 1057 (quoting W. Keeton, *Prosser and Keeton on the Law of Torts* § 70, at 502 n. 48 (5th ed.1984))) (omission in original). Plaintiffs argue Hallows acted from purely personal motives, and thus outside the scope of his employment, because he shot the dogs for disturbing his garden and bothering his horses. To this end, plaintiffs rely on Peters's affidavit, where he stated that Hallows "admitted that . . . he had shot the dogs because they had disturbed his garden and bothered his horses," and Shari Lynn Crisman's testimony that Trooper was physically incapable

argument that plaintiffs were required to marshal the evidence to attack what the court labeled as findings of fact.

4. Hallows erroneously relies on *Nielson* for the proposition that his claim of the Immunity Act's applicability alone is sufficient to invoke the Immunity Act's notice requirements. *Nielson* is distinguishable from the instant case because in

*Nielson,* "it [was] clear that the conduct of which [plaintiff] complain[ed] was conduct that [defendant] engaged in while performing his duties as a State employee and was done under color of that authority," *Nielson,* 888 P.2d at 134, whereas here Hallows's conduct may have been completely unrelated to his governmental employment.

of chasing deer. We agree that this evidence, when viewed in the light most favorable to plaintiffs, is sufficient to create an issue of fact as to whether defendant acted outside the scope of his employment and the trial court thus erred in granting summary judgment. *See Apache Tank Lines, Inc. v. Cheney,* 706 P.2d 614, 616 (Utah 1985) (per curiam) (" 'A single sworn statement is sufficient to create an issue of fact.' ") (quoting *Webster v. Sill,* 675 P.2d 1170, 1172 (Utah 1983)).

¶ 13 Hallows argues his conduct in shooting the dogs was within the scope of his employment for DWR because the dogs were chasing deer or elk that he was required to protect. *See* Utah Code Ann. § 23–14–1(2)(a) (1998) ("Subject to the broad policy-making authority of the Wildlife Board, the Division of Wildlife Resources shall protect, propagate, manage, conserve, and distribute protected wildlife throughout the state."). However, because this account of what occurred differs in material respect from plaintiffs' version of events, it merely underscores that summary judgment is inappropriate. Rather, Hallows's version of events shows that there is a fundamental dispute as to what happened, requiring a fact finder to hear the evidence, weigh credibility, and determine the facts.

## CONCLUSION

¶ 14 We conclude that the Immunity Act has no application and thus its notice of claim and statute of limitations provisions do not bar plaintiffs' action for conduct occurring outside the scope of Hallows's employment for DWR. Further, because there existed a genuine issue of material fact as to whether Hallows shot the dogs outside the scope of his employment, the trial court erred in granting summary judgment for Hallows.

¶ 15 Reversed and remanded.

¶ 16 WE CONCUR: PAMELA T. GREENWOOD, Presiding Judge and NORMAN H. JACKSON, Associate Presiding Judge.