D.D.Z. and D.Z., a minor, by and through her general guardian, M.T.Z.; and M.T.Z., individually, Plaintiffs and Appellants,

v.

MOLERWAY FREIGHT LINES, INC., a Montana corporation; J.S.; and T.P., Defendants and Appellees.

No. 930245–CA.

Court of Appeals of Utah.

July 15, 1994.

Robert M. McDonald (Argued), McDonald, West & Benson, Salt Lake City, for appellants.

Mark Dalton Dunn (Argued), J. Rand Hirschi, Kevin D. Swenson, Dunn & Dunn, Salt Lake City, for appellee J.S.

Stephen G. Morgan, Joseph E. Minnock (Argued), Morgan & Hansen, Salt Lake City, for appellee Molerway.

Samuel King, Salt Lake City, for appellee T.P.

Before BENCH, GREENWOOD and JACKSON, JJ.

## OPINION

JACKSON, Judge:

D.D.Z. appeals from summary judgments in favor of J.S., a co-employee, and Molerway, their employer, on her claims for damages based on assault and battery, intentional infliction of emotional distress, and violation of the Utah Dramshop Act. M.T.Z. appeals the ruling that he failed to state a claim against J.S. for medical expenses paid on behalf of his minor daughter, D.Z., arising out of the same incident. We affirm.

## FACTS

Because the majority of this appeal is from summary judgments, we set forth the facts in a light most favorable to the plaintiffs. On August 17, 1991, Molerway Freight Lines had a party at Yuba Reservoir for its employees and their guests. The party was organized and sponsored by Molerway's Salt Lake City terminal manager, J.S. D.D.Z., a new employee, was invited and encouraged to attend. D.D.Z. brought D.Z., her six-year-old daughter, to the party. Defendant T.P., an employee of Molerway, also attended the party.

Alcohol, supplied by J.S. and others, was consumed during the course of the evening. Most of the participants became intoxicated. At one point during the evening, T.P. entered the bed of D.D.Z.'s truck and sexually assaulted her in the presence of her daughter. J.S. and other employees witnessed the assault and made no attempt to intervene. On January 2, 1992, plaintiffs commenced this action seeking damages. The trial court granted motions for summary judgment on several issues and the plaintiffs appeal.

## ISSUES

D.D.Z. asserts that the trial court erred in (1) granting summary judgment for J.S. based on the grounds that J.S. did not have the intent required to make him liable to D.D.Z. for the harm inflicted by T.P.,[1] (2)

---

1. Both trial court rulings, i.e., the grant of summary judgment and denial of motion to reconsider, were based on the trial court's assumption that J.S. had witnessed the "assault" on D.D.Z. as she claimed. Accordingly, we need not decide

ruling that under the doctrine of respondeat superior, Molerway was not vicariously liable for the acts of T.P. or the conduct of J.S., and (3) not holding Molerway and J.S. liable under the Utah Dramshop Act for the actions of T.P., who was intoxicated. Finally, M.T.Z. asserts procedural error in the denial of his claim for D.Z.'s medical expenses.

## ANALYSIS

### I. J.S.'s Liability For Intentional Torts

#### A. Intentional Infliction of Emotional Distress

■ D.D.Z.'s brief does not contain any argument or citation to legal authorities regarding the "intent" element or other elements of her claim against J.S. for intentional infliction of emotional distress. Accordingly, we do not address it.[2] *See* Rule 24(a)(9) of the Utah Rules of Appellate Procedure (appellant's argument "shall contain the contentions and reasons of the appellant with respect to the issues presented, with citation to the authorities"); *Christensen v. Munns*, 812 P.2d 69, 72 (Utah App.1991) (stating that because brief contained no legal authority or analysis, court declined to address issue and assumed correctness of judgment below).

#### B. Assault and Battery

■ The gravamen of an assault and battery is the *actor's intention* to inflict injury. *Matheson v. Pearson*, 619 P.2d 321, 322 (Utah 1980) (emphasis added). The elements of civil assault in Utah are:

1. The defendant *acted*, intending to cause harmful or offensive contact with the plaintiff, or imminent apprehension of such contact; and

whether he was an actual eye witness to the assault.

2. D.Z. also asserts a cause of action for intentional infliction of emotional distress but also failed to provide any argument or legal citation for her claim. Utah law requires a showing of three elements to support a claim of intentional infliction of emotional distress: (1) that defendant intentionally engaged in conduct toward the plaintiff that is considered outrageous and intol-

2. As a result, the plaintiff was thereby put in imminent apprehension of [harm] [contact].

3. The plaintiff suffered injuries proximately caused by the defendant's actions.

Model Utah Jury Instructions 10.18 (1993) (emphasis added). If the defendant's acts of assault result in actual touching or striking of plaintiff, they constitute battery. *State v. Barkas*, 91 Utah 574, 65 P.2d 1130, 1133 (1937); *see Stricklin v. Parsons Stockyard Co.*, 192 Kan. 360, 388 P.2d 824 (1964) (a battery is the unprivileged touching or striking of one person by another, done with the intent of bringing about either contact or apprehension of contact that is harmful or offensive).

■ J.S. moved for summary judgment on the basis that D.D.Z. failed to show that J.S. intended the harm that T.P. inflicted upon D.D.Z. The trial court ruled "assuming that J.S. witnessed anything which could be claimed to be an assault, the fact he witnessed it does not, without further and additional evidence of intent, [such as committing the acts himself or aiding and abetting T.P.,] show that he in any way intended the result which plaintiffs claim invaded their interest." Later D.D.Z. filed a motion for reconsideration of the trial court's ruling and submitted the affidavit of Bree Van Wagenen. The substance of her affidavit is that she saw a group of people gathering around D.D.Z.'s pickup, she joined them, she saw T.P. making physical advances and D.D.Z. attempting to repel him, she noticed that the observers included J.S. and his wife, someone took polaroid pictures of the encounter, and no one, including J.S., attempted to assist D.D.Z. or restrain T.P. Relying on these facts, D.D.Z. argues that J.S. is liable for assault and battery due to his own wrongful

erable in that it offends generally accepted standards of decency and morality; (2) that the conduct was performed with the purpose of inflicting emotional distress or that a reasonable person would know that such conduct would cause emotional distress; and (3) that severe emotional distress was the direct result of defendant's conduct. *See Russell v. Thomson Newspapers, Inc.*, 842 P.2d 896, 905 (Utah 1992).

acts and omissions, regardless of his capacity as a manager for Molerway.

Because the elements of assault and battery require an "actor," the analysis should first focus on whether J.S. was the requisite actor. If he was an actor in this episode, then his intent could be inferred from his actions. If he was not an actor, then his intent is not relevant. D.D.Z. has not made any assertion or allegation that J.S. was acting in concert with T.P., or pursuant to a common design, or that he gave substantial encouragement or assistance to T.P.'s conduct. *See* Restatement (Second) of Torts § 876 (Persons Acting in Concert); *Rael v. Cadena*, 93 N.M. 684, 604 P.2d 822, 823 (App.1979) (liability cannot be predicated upon mere presence at a battery; verbal encouragement at scene gives rise to liability). In fact, D.D.Z. claims J.S. is liable for her injuries because he failed to act, i.e., intervene in her behalf. This is a clear case of assault and battery inflicted by T.P.; he was the actor, not J.S.

As stated above, liability for assault requires action by the defendant. *See also* Restatement (Second) of Torts §§ 25–26. Likewise, to make the actor liable for battery, the harmful bodily contact must be caused by an act done by the person whose liability is in question. Restatement (Second) of Torts, § 14, at 26 (1965). An external manifestation of the will is necessary to constitute an act, and an act is necessary to make one liable for battery. *Id.* at cmt. b. "Therefore, it is not enough to make one liable if some third person has utilized a part of his body as an instrument by which to carry out the third person's intention to cause harm to another. In such a case, the third person is the actor." *Id.*

Here, J.S. was not the actor whose will was externally manifested in causing harm to D.D.Z. Rather, T.P. was the actor. T.P.'s will was manifested in his acts of assault and battery upon D.D.Z., which caused the harm.

Accordingly, we conclude that the trial court's grant of summary judgment in favor of J.S. on D.D.Z.'s assault and battery claims was proper.[3]

## II. Molerway Liability

D.D.Z. also asserts that her employer, Molerway, is liable for acts by T.P. and J.S.[4] Her claim is based on the doctrine of respondeat superior. An employer is vicariously liable for the acts of its employees under the doctrine of respondeat superior only when the employees are acting within the scope of their employment. *Christensen v. Swenson*, 874 P.2d 125, 127 (Utah 1994) (citing *Clover v. Snowbird Resort*, 808 P.2d 1037, 1040 (Utah 1991). The term "scope of employment" in respondeat superior cases refers to "those acts which are so closely connected with what the servant is employed to do, and so fairly and reasonably incidental to it, that they may be regarded as methods, even though quite improper ones, of carrying out the objectives of the employment." *Id.* (quoting W. Keeton, *Prosser and Keeton on the Law of Torts* § 70, at 502 (5th ed. 1984). Utah cases focus on the following three criteria for determining when the conduct of an employee falls within the scope of employment: (1) the employee's conduct must be of the general kind the employee is employed to perform; (2) the employee's conduct must occur within the hours of the employee's work and the ordinary spatial boundaries of the employment; and (3) the employee's conduct must be motivated, at least in part, by the purpose of serving the employer's interest. *Clover*, 808 P.2d at 1040; *Birkner v. Salt Lake County*, 771 P.2d 1053, 1056–57 (Utah 1989). An employee who fails to meet any one of the three factors is outside the scope of employment and the employer cannot be held liable under the doctrine of respondeat superior.

---

**3.** D.D.Z. also argues that "the intent requirement of an intentional tort does not relate to the act which produces the injury, but the consequences of the act and the circumstances giving rise to the probability of injury." In view of our conclusion that J.S. was not the actor, we need not reach the question of his intent.

**4.** As discussed above, we have not found conduct on the part of J.S. for which Molerway could be vicariously liable. Thus, the only conduct for which Molerway can be held vicariously liable is T.P.'s assault and battery.

As a general rule, the issue of whether an employee acted within, the scope of employment is a question of fact. *J.H. v. West Valley City,* 840 P.2d 115 (Utah 1992); *Birkner,* 771 P.2d at 1057. However, some conduct is so clearly outside the scope of employment that the issue may be decided by the trial court as a matter of law. *Id.; see Kruse v. White Bros.* 81 Cal.App. 86, 253 P. 178, 181 (1927). An assault and battery is so clearly outside the scope of T.P.'s employment that the trial court could decide the issue as a matter of law. *See S.H. v. State,* 865 P.2d 1363, 1366 (Utah 1993) (J. Stewart, dissenting) (stating that it is general rule that "intentional torts such as assault and battery are not within the scope of employment"); *Hodges v. Gibson Products Co.,* 811 P.2d 151, 157 (Utah 1991); *Birkner,* 771 P.2d at 1056–59.

Without addressing the first two factors, we find that T.P. was not motivated by the purpose of serving his employer's interest. "If the employee acts 'from purely personal motives ... in no way connected with the employer's interests' or if the conduct is 'unprovoked, highly unusual, and quite outrageous,' then the master is not liable." *Birkner,* 771 P.2d at 1057 (quoting W. Keeton, *Prosser and Keeton on the Law of Torts* § 70, at 502 n. 48 (5th ed. 1984).

T.P.'s assault on D.D.Z. was not intended to further Molerway's business. His conduct was self serving and motivated by his own personal impulses. *See Hodges,* 811 P.2d at 157 (finding no "vicarious liability for an employer when an employee acts entirely on personal motives unrelated to the employer's interests"). Viewing the facts before us in a light most favorable D.D.Z., we hold that reasonable minds could not disagree with the conclusion that T.P.'s sexual assault and battery, in any context, was outside the scope of his employment. Accordingly, we hold that the trial court properly granted summary judgment in favor of Molerway.

### III. Dramshop Act

D.D.Z. also asserts that the trial court erred in not holding Molerway and J.S. liable under the Utah Dramshop Act for the actions of T.P., who was intoxicated. The Dramshop Act states in pertinent part:

(1) Any person who directly gives, sells or otherwise provides liquor, or at a location allowing consumption on the premises, any alcoholic beverage, to the following persons, and by those actions causes the intoxication of that person, is liable for injuries in person, property or means of support to any third person, or to the spouse, child, or parent of that third person, resulting from the intoxication:

(a) any person under the age of 21 years;

(b) any person who is apparently under the influence of intoxicating alcoholic beverages or products or drugs;

(c) any person whom the person furnishing the alcoholic beverage knew or should have known from the circumstances was under the influence of intoxication alcoholic beverages or products or drugs; or

(d) any person who is a known interdicted person.

Utah Code Ann. § 32A–14–101(1) (1991). This court has held that the Dramshop Act does not apply to individuals in a noncommercial setting. *Sneddon v. Graham,* 821 P.2d 1185, 1188 (Utah App.1991). In the present case, the alcohol was purchased by various people and made available to everyone at the party. The providers did not supply the alcohol for any commercial purpose. Thus, the Dramshop Act is inapplicable and the trial court correctly granted summary judgment in favor of all defendants on this issue.

### IV. M.T.Z.'s Failure to Individually State a Claim

M.T.Z. sought recovery from J.S. individually and on behalf of his daughter, D.Z., for the cost of his daughter's psychological treatments. The trial court held that he failed to state a cause of action against J.S. M.T.Z. argued that parents who bear the responsibility of providing a child's basic necessities have the right to sue in their own name for medical expenses paid out on behalf of the minor child. However, whether a parent sues individually for damages sustained by

the child, or on behalf of the child, the child must have a right to recover those damages. Thus, if J.S. is not found liable to D.Z., there can be no cause of action for herself or her father. In this case, J.S. was not found liable for any damages sustained by M.T.Z.'s minor daughter.[5] Thus M.T.Z. could not state a claim against J.S. because his minor daughter had none.

### CONCLUSION

We affirm the trial court's grant of summary judgment in favor of J.S. and Molerway and its denial of the motion for reconsideration or alternative remedy. We also find that M.T.Z. did not have a cause of action against J.S. or Molerway either individually or on behalf of his daughter.

BENCH and GREENWOOD, JJ., concur.

---

5. The above analysis concerning J.S.'s liability to D.D.Z. applies equally to D.Z. Because J.S. was not liable to D.D.Z. for her injuries, he similarly was not liable to D.Z.