Wayne V. STEPHENS and Suzanne M. Stephens, individually and as personal representatives of the Estate of Michael Wayne Stephens and as guardians ad litem for Alex Ryan Stephens and Rebecca Marie Stephens, minors, and Ralph Siebert and Eileen Siebert, individually, Plaintiffs and Appellants,

v.

BONNEVILLE TRAVEL, INC., a California corporation dba Beehive Business and Leisure Travel, Defendant and Appellee.

No. 950412.

Supreme Court of Utah.

March 28, 1997.

Gordon L. Roberts, James T. Blanch, Salt Lake City, for plaintiffs and appellants.

Dale J. Lambert, Mark L. Anderson, Salt Lake City, for defendant and appellee.

HOWE, Justice:

Plaintiffs Wayne and Suzanne Stephens and Ralph and Eileen Siebert appeal from the trial court's grant of summary judgment in favor of defendant Bonneville Travel, Inc., dba Beehive Business and Leisure Travel ("Beehive"), based on the court's ruling that Utah Code Ann. § 32A–14–101 (the "Dramshop Act" or "Act") does not apply to an entity that provides liquor to an apparently intoxicated person in a noncommercial social setting.

### FACTS [1]

Beehive is a travel agency that is not in the business of selling, storing, serving, manufacturing, or distributing alcoholic products. On Friday, September 11, 1993, Michael Marino had lunch with Allison Pinder, a Beehive travel agent, during which he consumed three mixed drinks and two glasses of wine. Pinder testified that the purpose of this luncheon was to discuss travel plans for Marino and his wife. Marino paid for the lunch and the drinks.

Toward the end of that same afternoon, several Beehive employees expressed an in-

---

1. The facts were stipulated by the parties for the purposes of defendant's motion for summary judgment and this appeal. Those facts have been edited for purposes of this opinion. We therefore note that both parties have reserved the right to contest the stipulated facts and that our restatement of those facts should in no way be considered binding upon the parties or limit their right to contest said facts or present alternative scenarios in subsequent stages of this case.

terest in having an alcoholic drink. One of the employees, who had purchased a bottle of vodka on her lunch hour, went to her car and brought the bottle into the office. About that same time, Marino called one of the Beehive employees and asked what the "girls" were doing after work. Marino arrived at Beehive's office at approximately 5 p.m.

While at Beehive, Marino consumed an unspecified quantity of vodka from the bottle brought into the office by the employee. Approximately two hours after leaving Beehive, Marino was involved in a multi-car traffic accident that resulted in injuries to plaintiffs and to the Stephens' minor children, as well as the death of the Stephens' 12–year–old son.

Plaintiffs asserted claims against Marino, the Sage Club, a private club at which Marino consumed an undetermined amount of alcohol the day of the accident,[2] and Beehive Travel under the Dramshop Act. The claims against Marino and the Sage Club were settled. This action was brought solely against Beehive.

Plaintiffs contend that the specific and plain language of the Dramshop Act extends potential liability to "any person"[3] who provides "liquor" to a person enumerated in the Act regardless of the location where the liquor is provided. Beehive maintains that the language of the statute and its legislative history indicate that liability is imposed only on those who are in the business of selling liquor and who serve liquor in a commercial vending setting, not in a location like Beehive where serving liquor is not part of its regular business. The trial court granted Beehive's motion for summary judgment, ruling that the Dramshop Act does not impose liability for providing liquor in a social, noncommercial setting.

**2.** Although Beehive contests the issue, it is willing to assume for the purposes of this appeal that the liquor consumed by Marino at Beehive contributed to his intoxication and that such intoxication was a proximate cause of the accident.

## STANDARD OF REVIEW

■ Summary judgment is proper only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Utah R. Civ. P. 56(c); *Wilcox v. Geneva Rock Corp.*, 911 P.2d 367, 368 (Utah 1996); *Higgins v. Salt Lake County*, 855 P.2d 231, 235 (Utah 1993). In reviewing a grant of summary judgment, " '[w]e determine only whether the trial court erred in applying the governing law and whether the trial court correctly held that there were no disputed issues of material fact.' " *Wilcox*, 911 P.2d at 368 (quoting *Ferree v. State*, 784 P.2d 149, 151 (Utah 1989)). Because both parties stipulated to the facts for purposes of the motion for summary judgment and this appeal, there are no issues of material fact. The only issue before us is solely a question of law: whether the trial court properly interpreted and applied the Dramshop Act. In matters of pure statutory interpretation, an appellate court reviews a trial court's ruling for correctness and gives no deference to its legal conclusions. *State v. Vigil*, 842 P.2d 843, 844 (Utah 1992).

## ANALYSIS

The issue before us is narrow. We are asked to determine whether the Dramshop Act imposes liability upon any person who provides liquor, a defined term under the Act, to a person listed in the Act regardless of the location where the "liquor" is served or whether the provider is engaged in the commercial sale of "liquor." The Dramshop Act provides in pertinent part:

(1) Any person who directly gives, sells, or otherwise provides liquor, or at a location allowing consumption on the premises, any alcoholic beverage, to the following persons, and by those actions causes the intoxication of that person, is liable for injuries in person, property, or means of support to any third person, or to the

**3.** " 'Person' means any individual, partnership, firm, corporation, association, business trust, or other form of business enterprise, including a receiver or trustee, and the plural as well as the singular number, unless the intent to give a more limited meaning is disclosed by the context." Utah Code Ann. § 32A–1–105(34) (1994).

spouse, child or parent of that third person, resulting from the intoxication:

. . .;

(b) any person who is apparently under the influence of intoxicating alcoholic beverages or products or drugs;

(c) any person whom the person furnishing the alcoholic beverage knew or should have known from the circumstances was under the influence of intoxicating alcoholic beverages or products or drugs[.]

Utah Code Ann. § 32A–14–101(1) (1994).

■ When faced with a question of statutory construction, we look first to the plain language of the statute. *K & T, Inc. v. Koroulis,* 888 P.2d 623, 627 (Utah 1994). In construing a statute, we assume that "each term in the statute was used advisedly; thus the statutory words are read literally, unless such a reading is unreasonably confused or inoperable." *Savage Indus., Inc. v. Utah State Tax Comm'n,* 811 P.2d 664, 670 (Utah 1991) (footnote omitted). "Only if we find some ambiguity need we look further." *Schurtz v. BMW of N. Am., Inc.,* 814 P.2d 1108, 1112 (Utah 1991); *see also World Peace Movement of Am. v. Newspaper Agency Corp.,* 879 P.2d 253, 259 (Utah 1994) ("Only when we find ambiguity in the statute's plain language need we seek guidance from the legislative history and relevant policy considerations.").

We turn to the specific language of the Dramshop Act. The term "alcoholic beverages" is defined in the Alcoholic Beverage Control Act ("ABCA"), of which the Dramshop Act is a part, to include both "beer" and "liquor." Utah Code Ann. § 32A–1–105(2). "Liquor" is defined to exclude "any beverage defined as a beer, malt liquor, or malted beverage that has an alcohol content of less than 4% alcohol by volume."[4] *Id.* § 32A–1–105(24)(b). Thus ABCA distinguishes between "alcoholic beverages" and "liquor," the former including the latter as well as beer.

■ The Dramshop Act employs these definitions. The Act provides that "[a]ny person who directly gives, sells, or otherwise provides liquor, *or at a location allowing consumption on the premises,* any alcoholic beverage," (emphasis added) may be liable. Examining the text, it is clear that the requirement "or at a location allowing consumption on the premises" modifies the term "alcoholic beverages" but not the word "liquor." Thus, according to the Act's plain language, "any person" serving any "alcoholic beverage" is potentially liable if the serving occurs at "a location allowing consumption on the premises." However, a person who serves "liquor" is potentially liable regardless of the location where the "liquor" is served. In other words, the Dramshop Act imposes its standard of care on a broader class of servers, by eliminating the location requirement, whenever the more powerful "liquor" is provided.

Beehive counters the Act's plain language, arguing that the statute was "inartfully drafted" and that "it seems apparent that the term 'premises' in subsection (1) [of the Act] modifies both the terms 'liquor' and 'alcoholic beverage.'" We disagree. Such a reading would render the term "liquor" as used in the Dramshop Act completely superfluous and thereby would violate our well-established rule that "statutory provisions should be construed to give full effect to *all* their terms." *Vigil,* 842 P.2d at 845 (emphasis added). Beehive's interpretation would impose the same liability on servers of "liquor" and "alcoholic beverages" although the Dramshop Act employs both of the definitionally distinct terms and treats servers of those drinks differently.

Although the statute's text seems clear, Beehive contends that Utah case law supports the trial court's decision not to extend liability to Beehive. Although this court has never addressed the issue, in *Sneddon v. Graham,* 821 P.2d 1185 (Utah.Ct.App.1991), the court of appeals interpreted the Dramshop Act and applied it to a situation in which a person had provided beer, an "alcoholic beverage" but not "liquor" under ABCA, to an acquaintance in his home. The

---

**4.** "Heavy beer," which has an alcohol content greater than four percent, is considered "liquor."

Utah Code Ann. § 32A–1–105(19) (1994).

analysis of the court of appeals was similar to our analysis in this case. The court first observed that the text of the Act, coupled with the definitions provided by ABCA, was not ambiguous. It noted that "alcoholic beverages" were statutorily defined to include both "beer" and "liquor" and that the term "liquor" was defined to exclude "beer." *Id.* at 1188. The court then stated that "[t]he statute's plain language explicitly limits liability to persons who provide alcoholic beverages 'at a location allowing consumption on the premises,'" *id.*, thereby rejecting plaintiff's claim. The result reached by the court of appeals would be reached by following our analysis in this case, and we adopt its holding. However, the court proceeded to state that "the Dramshop Act does not apply to individuals in a noncommercial social setting," *id.*, although it was not confronted with a case involving "liquor." Therefore, the issue of whether liability extends to a "person" who provides "liquor" to someone protected by the Act in a location that does not "allow consumption on the premises" was not before it. Any statement regarding such liability must be considered dicta and, in any event, is disavowed by our opinion today insofar as it is inconsistent. The holding in *Sneddon* is limited to those occasions where beer or other "alcoholic beverages" that cannot be considered "liquor" are the only beverages provided to the intoxicated person and therefore does not implicate the issue before us today.

In *D.D.Z. v. Molerway,* 880 P.2d 1 (Utah. Ct.App.1994), the court of appeals relied on the dicta in *Sneddon* and applied the "noncommercial social setting" rule to a case where "liquor" and "beer" were provided. In *Molerway,* an employee of the defendant corporation who became intoxicated at a company event sexually assaulted a co-employee. *Id.* at 2. The victim sued, asserting a claim, among others, under the Dramshop Act. The court of appeals relied solely on *Sneddon* to dispose of the claim, with no analysis of the Act's text. *Id.* at 5. The

*Molerway* decision failed to consider that the defendant had provided "liquor" to the intoxicated employee, not just beer as in *Sneddon,* a distinction essential to the determination of liability under the Act. Because of this omission, we decline to follow *Molerway.*

Beehive has also cited cases from other jurisdictions where courts have refused to create social host liability. It is clear, however, that the Utah Dramshop Act imposes different standards of liability depending upon the type of alcoholic beverage at issue, and it appears that Utah is unique in creating such a distinction. As a result, cases interpreting dramshop statutes from other jurisdictions are inapposite to the interpretation of Utah's Dramshop Act. Similarly, the cases cited by Beehive involving *common law* social host liability, including jurisdictions such as Hawaii and Washington, are irrelevant to the interpretation of the Utah Dramshop Act, a legislative enactment.

Beehive next makes several structural arguments regarding the Dramshop Act which, it contends, demonstrate that the legislature intended the Dramshop Act to apply only to commercial establishments. Specifically, Beehive argues that the Act's title and its requirement that a defendant "directly give, sell, or otherwise provide" alcohol demonstrate that the legislature intended that only those in the business of providing alcoholic beverages be liable.[5]

It is a plausible argument that the presence of "Dramshop" in the title of the Act connotes that the Act applies only to commercial establishments that sell alcohol for consumption on the premises. "Dram-shop" is defined as "[a] drinking establishment where liquors are sold to be drunk on the premises; a bar or saloon." *Black's Law Dictionary* 444 (5th ed. 1979). However, this court has held that a statute's title is not part of its text and cannot be used as a tool of statutory construction unless the statute's

**5.** Beehive also argues that the Act's damage limitations and provisions prohibiting an employer from retaliating against an employee who refuses to serve alcohol to a person protected under the Act, Utah Code Ann. § 32A–14–101(5), (8) (1994), demonstrate that the Act applies only to commercial establishments engaged in the sale of alcohol. These arguments are without merit. The fact that some provisions of the Dramshop Act are addressed primarily to commercial establishments does not mean that the entire Act applies exclusively to those in the business of providing alcohol.

language is ambiguous. *Funk v. Utah State Tax Comm'n*, 839 P.2d 818, 820 (Utah 1992) (court will look to caption of statute to aid in determining statute's intent only if there is ambiguous statutory language). Because the Dramshop Act is not ambiguous and the plain language of the statute is clear, we find it inappropriate to use the Act's title to limit its application to "bars and saloons."

Beehive also contends that the phrase "directly give, sell, or otherwise provide" indicates that the provider must be involved in the commercial vending of alcoholic beverages as a prerequisite to liability. This argument fails on two grounds. First, it ignores the terms "give" and "otherwise provide," actions that apply to "social hosts" and commercial establishments alike, and unwarrantedly focuses on "sell," the portion of the statute most likely to implicate a commercial establishment. Second, the argument fails to recognize that "any person" may be liable under the statute. The Act does not mention commercial establishments, but instead imposes liability on *"any person* who directly gives, sells, or otherwise provides liquor."

Beehive further maintains that because this court has ruled that the Dramshop Act imposes a duty akin to strict liability, *see Reeves v. Gentile*, 813 P.2d 111 (Utah 1991), its intent should be analogous to the liability imposed upon sellers in strict product liability cases. Beehive argues that commercial sellers of alcohol are those best able to bear the loss under the Act. Once again, however, in the absence of ambiguity, we decline to examine legislative intent or analogize the Act to strict product liability statutes and decisions in order to obfuscate its plain meaning.

Finally, Beehive urges this court to adopt a limited reading of the Dramshop Act because extending liability to social hosts is contrary to public policy and, therefore, "[t]he radical expansion of civil liability advocated [by plaintiffs] should be avoided unless the legislature's intentions in this regard are unmistakably clear." However, as discussed

throughout this opinion, we conclude that the Act, and thereby the legislature, clearly distinguishes between servers of "liquor" and "alcoholic beverages." Under such circumstances, we refuse to consider public policy arguments or otherwise attempt to assess the wisdom of the legislation. *Cf. Brinkerhoff v. Forsyth*, 779 P.2d 685, 686 (Utah 1989) (when "statutory language is plain and unambiguous, this court will not look beyond the same to divine legislative intent"). Our duty is to implement the law as it reads unless it results in an absurd outcome. That is not the case here.[6]

In conclusion, we hold that the Dramshop Act imposes potential liability on "any person" who provides "liquor" to a person enumerated in the Act, regardless of whether the liquor is provided at a "location allowing consumption on the premises" or whether the provider is in the business of purveying alcohol.

Reversed and remanded for proceedings consistent with this opinion.

Justice DURHAM and Judge NOEL concur in Justice Howe's opinion.

ZIMMERMAN, Chief Justice, concurring:

I concur in the opinion of Justice Howe for the simple reason that the legislation in question cannot fairly be read to reach a different result. However, in light of the potentially draconian result for private citizens who choose to serve social guests alcoholic beverages other than beer, and the high level of moral outrage publicly expressed about drunken drivers and the carnage they cause, I feel compelled to note the absurd distinctions contained in our dramshop act. These distinctions suggest a strong measure of hypocrisy in the state's policy toward those furnishing alcohol to others.

As the majority notes, "liquor" is defined as beverages that contain higher than four percent alcohol. Under this definition, "liquor" includes wine, distilled spirits, and so-called "heavy beer" sold only in state liquor

---

**6.** A reasonably clear public policy rationale is discernible on the face of the statute. "Liquor" has a higher alcohol content than other "alcoholic beverages" and its consumption is more likely to intoxicate the drinker. It is therefore understandable that liability is imposed upon a broader class of "liquor" servers than servers of less potent "alcoholic beverages."

stores. On the premise that the stronger beverages are more dangerous than the weaker, the dramshop act makes any provider of "liquor" liable without limitation for harm done by those who consume it, regardless of whether it is sold or given and regardless of the place where it is provided or consumed. But our statute is carefully crafted to make it plain that this severe liability does not attach to those who give, or even sell, beer that is not consumed on the premises, such as beer that is purchased in gas stations and convenience stores for consumption elsewhere. Yet if we were to look at the actual actions of those who consume alcohol and are involved in automobile accidents, rather than relying on some simplistic notion of "higher alcoholic contents equals more danger," we would have to acknowledge that excessive beer consumption is almost certainly involved in a majority of alcohol-related automobile accidents, not excessive consumption of "liquor."

While the citizens of this state consumed roughly one and a half gallons of "liquor" (two-thirds of a gallon of spirits, two-thirds of a gallon of wine, and one-tenth of a gallon of heavy beer) per person in 1995,[1] they consumed just over twelve gallons of beer for every man, woman, and child resident in Utah in 1995.[2] Given this enormous disparity, it is not unreasonable to assume that beer is involved in more alcohol-related automobile accidents than are heavy beer, spirits, and wine.[3] In fact, roadside surveys of 753 people conducted in May and June of 1977 revealed that fully 76 percent of the legally drunk drivers surveyed (blood alcohol content over .08 percent) were beer drinkers, while only 8.1 percent preferred spirits and

2.9 percent preferred wine. Of the eight factors studied, "[t]he single most important variable differentiating [between nondrinking and] drinking drivers was whether or not a person was a beer drinker."[4] Yet those who sell this beer for profit are not liable under the dramshop act, while a social host who gives wine to a guest is.

Why this irrational distinction, one that plainly undermines the declared purposes of the dramshop act? I suspect that this distinction can be explained by the fact that those who sell beer and vastly profit from those sales have a much stronger lobby than those social hosts who may provide their guests with wine in their homes or elsewhere. It seems that a more coherent social policy, one less subject to the charge of hypocrisy, would apply the dramshop sanctions equally to all alcoholic beverages rather than discriminating in favor of the providers of the only form of alcohol that the state of Utah permits to be sold in packaged form for profit by private interests.

Justice RUSSON concurs in the concurring opinion of Chief Justice ZIMMERMAN.

Having disqualified himself, Associate Chief Justice STEWART does not participate herein; District Judge FRANK G. NOEL sat.

---

1. *See* Utah Department of Alcoholic Beverage Control, Summary of Operations, July 1, 1995, to June 30, 1996, tbl. (showing 2,997,220 gallons of liquor sold in Utah and 1,959,000 population).

2. *See* Beer Institute, Brewer's Almanac Annual Report 1995 (showing 24,151,139 gallons of beer imported into Utah in 1995).

3. We note that 1.5 ounces of spirits or 3 ounces of wine are roughly equal to 12 ounces of beer for the purposes of blood alcohol content. Utah Department of Alcoholic Beverage Control, Summary of Operations, July 1, 1995, to June 30, 1996, tbl. ("Know Your Limit"). Calculating

based on the total of all alcoholic beverages consumed in Utah, the ratio of alcohol consumed in the form of beer compared to that consumed as wine is roughly 4.6 to 1, and compared to spirits is 1.5 to 1. *See id.* ((12.33 gal. beer/(.669 gal. wine * 4) = 4.6) and (12.33 gal. beer/(.697 gal. spirits * 8) = 1.5)). Thus, even considering the lower alcohol content of beer, it is still the case that beer is responsible for more alcohol consumed in Utah than are spirits or wine.

4. *See* Utah Alcohol Safety Action Project, Roadside Survey 8 (June 1977) (available from Utah Highway Safety Office).