2000 UT 37

**Ronald Lynn CLARK, Plaintiff and Appellant,**

v.

**Jose R. PANGAN, Defendant and Appellee.**

No. 981694.

Supreme Court of Utah.

April 7, 2000.

Gloria raised on appeal.

Samuel D. McVey, Salt Lake City, for plaintiff.

Paul Warner, Stephen J. Sorenson, Melinda M. Varszegi, Salt Lake City, for defendant.

RUSSON, Associate Chief Justice:

¶ 1 This case is before us on certification from the United States District Court for the District of Utah Central Division. The federal court has asked this court to rule on the following two questions of Utah law:

As a matter of Utah state law is it possible for the intentional tort of battery to be within the scope of a person's employment, and if it is possible for battery to be within the scope of one's employment, what test is to be employed to determine whether the battery was within the scope of employment.

## BACKGROUND

¶ 2 In July 1996, Clark and Pangan were working for the United States Postal Service. At that time, Pangan was a part-time supervisor, and his duties included supervising Clark. On July 17, Clark and Pangan had a disagreement regarding instructions that Pangan had given to Clark on how to conduct an inspection and complete the required paperwork. Pangan claims that he twice tried to escort Clark into an office to avoid arguing in front of the other employees. Pangan claims that the second time, he told Clark to clock out and go home but that Clark refused once again and tried to walk away. Pangan maintains that at that point, he opened one hand to block Clark and pointed toward his office with the other hand. Clark alleges, however, that Pangan hit or shoved him.

¶ 3 Clark filed charges in Utah state court alleging assault and battery, negligence, intentional infliction of emotional distress, and negligent infliction of emotional distress. After the complaint was filed, the United States certified that Pangan was acting within the scope of employment at the time of the incident. This allowed the United States to substitute itself as party defendant under the Westfall Act, 28 U.S.C. §§ 2671–2680, and the action was removed to federal court. The case was assigned to United States District Court Judge Dee Benson. Clark filed a motion for review of scope of employment certification and a motion for remand to state court to which the United States filed an opposition. Judge Benson referred the matter to United States Magistrate Judge Samuel Alba, who heard oral argument and then issued a report and recommendation.

¶ 4 Applying the three-part test for scope of employment from *Clover v. Snowbird Ski Resort*, 808 P.2d 1037, 1040 (Utah 1991), which cites *Birkner v. Salt Lake County*, 771 P.2d 1053, 1056–57 (Utah 1989), Magistrate Judge Alba held that Pangan was acting within the scope of employment when he allegedly struck Clark. On August 5, 1998, Clark filed an objection to the magistrate's report and recommendation, and the United States replied to the objection. Thereafter, the federal court requested, by way of certification, that this court answer two questions of Utah law: "whether the intentional tort of battery is outside the scope of employment as a matter of law and, if not always outside the scope of employment, what test should be employed to determine whether the inten-

tional tort of battery is within the scope of employment."

## JURISDICTION

¶ 5 We have original jurisdiction over questions of state law that have been certified by a court of the United States. *See* Utah Code Ann. § 78-2-2(1) (1996).

## ANALYSIS

I. SHOULD THE INTENTIONAL TORT OF BATTERY BE CONSIDERED OUTSIDE THE SCOPE OF EMPLOYMENT AS A MATTER OF LAW?

¶ 6 Clark argues that battery should be considered outside the scope of employment as a matter of law but that exceptions should be made if the use of force is foreseeable by the employer. Pangan asserts that it is possible for the intentional tort of battery to have occurred within the scope of a person's employment and, therefore, battery should not be held to lie outside the scope of employment as a matter of law. He also argues that the question of whether an employee acted within the scope of employment should be decided by the trier of fact.

¶ 7 Holding an employer vicariously liable for the tortious acts of an employee has been justified under the theory of respondeat superior. The policy objectives given for implementing vicarious liability under this theory "are to prevent the recurrence of tortious conduct, to give greater assurance of compensation for the victim, and to ensure that the victim's losses will be equitably borne by those who benefit from the enterprise that gave rise to the injury." 27 Am.Jur.2d *Employment Relationship* § 459 (1996). It is also generally believed that an employer is best able to control the conduct of an employee. *See id.*

¶ 8 This court has long recognized that an employer can be vicariously liable for the intentional tortious acts of employees under the theory of respondeat superior if those acts are conducted within the scope of employment.[1] We have considered scope of employment in determining the liability of an employer in numerous cases involving intentional torts. *See Jackson v. Righter,* 891 P.2d 1387, 1391–92 (Utah 1995) (considering scope of employment to determine if employer was liable for employee's alienation of affections); *Phillips v. JCM Dev. Corp.,* 666 P.2d 876, 881–83 (Utah 1983) (finding employer liable for employee's act of fraud committed within scope of employment); *see also J.H. v. West Valley City,* 840 P.2d 115, 122–23 (Utah 1992) (analyzing scope of employment to determine if employer was liable for sexual abuse committed by employee); *Birkner v. Salt Lake County,* 771 P.2d 1053, 1056–59 (Utah 1989) (analyzing scope of employment to determine if employer was liable for sexual battery committed by employee); *cf. Hodges v. Gibson Prods. Co.,* 811 P.2d 151, 156–57 (Utah 1991) (holding employer liable for employee's intentional malicious prosecution because employee acted in scope of authority and was motivated in whole or in part to carry out employer's purposes); *Bowman v. Hayward,* 1 Utah 2d 131, 135–36, 262 P.2d 957, 960 (1953) (holding sheriff liable for assault and battery committed by deputy while acting in official capacity); *Barney v. Jewel Tea Co.,* 104 Utah 292, 296, 139 P.2d 878, 879 (1943) (holding that employer should be vicariously liable for willful torts of employee if such acts were conducted in furtherance of employer's interests or when employment is such that use of force could be contemplated); *Keller v. Gunn Supply Co.,*[2] 62 Utah 501, 505–06, 220 P. 1063, 1064 (1923) (holding that employer was not vicariously liable for employee's assault on customer because employee's conduct was not within scope of employment).

---

1. It has been noted that in *all* states, an employer may be held vicariously liable for the intentional and tortious use of force by an employee if the conduct is within the scope of employment. *See* Restatement (Second) of Agency: Specific Torts of Servants § 245 cmt. b (1958).

2. While the *Keller* court cited an Alabama case (*Hardeman v. Williams,* 150 Ala. 415, 43 So. 726 (1907)) and an Eighth Circuit case (*Clancy v. Barker,* 131 F. 161 (8th Cir.1904)), it is not clear from the decision what rule of law the *Keller* court relied upon.

¶ 9 Moreover, as a general rule, whether one is acting within the scope of employment is a question to be determined by the finder of fact. *See Jackson,* 891 P.2d at 1391. Only when the conduct in question is so clearly either within or outside the scope of employment that reasonable minds could not differ as to the finding is the court permitted the discretion to decide as a matter of law. *See Christensen v. Swenson,* 874 P.2d 125, 127 (Utah 1994).

¶ 10 It has been noted by Clark in his argument and the federal court in its request for certification that the Utah Court of Appeals' ruling in *D.D.Z. v. Molerway Freight Lines, Inc.,* 880 P.2d 1, 5 (Utah Ct.App.1994), and Justice Stewart's dissenting discussion of intentional torts in *S.H. v. State,* 865 P.2d 1363, 1366 (Utah 1993), suggest a possibility that assault and battery may be outside the scope of employment as a matter of law. We address these concerns below.

¶ 11 In *D.D.Z.,* the court of appeals reviewed whether an employer was vicariously liable for the sexual assault and battery committed by an employee. *See D.D.Z.,* 880 P.2d at 4–5. In its review, the *D.D.Z.* court recognized that under Utah law, an employer is vicariously liable for the acts of its employees when those acts are committed within the scope of employment and that the determination of scope of employment is generally a question of fact. *See id.* The *D.D.Z.* court also stated the three criteria on which Utah cases focus to determine whether an employee is acting within the scope of employment. *See id.* at 4. Additionally, the *D.D.Z.* court recognized the general rule that some conduct is so clearly outside the scope of employment that the trial court may decide the question as a matter of law. *See id.* at 5.

¶ 12 In applying all of these rules to the facts of *D.D.Z.,* the court of appeals ruled that the trial court could decide the issue as a matter of law because the sexual assault and battery were clearly outside the scope of the employee's employment. *See id.* How-

ever, the *D.D.Z.* court continued its review by applying the third factor of the scope of employment test to find that the employee was not motivated by the purpose of serving his employer's interest and that his actions were purely self-serving and motivated by personal impulses. *See id.*

¶ 13 The court of appeals did not rule in *D.D.Z.* that assault and battery are outside the scope of employment as a matter of law. Instead, the *D.D.Z.* court ruled that in light of the facts of that case, reasonable minds could not disagree that the sexual assault and battery were outside the scope of this employee's employment and, therefore, the sexual assault and battery were outside the scope of employment as a matter of law.[3] *See id.*

¶ 14 In his dissenting opinion in *S.H.,* Justice Stewart commented that it is a general rule that intentional torts such as assault and battery are not within the scope of employment. *See S.H.,* 865 P.2d at 1366 (Stewart, J., dissenting). As authority for this rule, Justice Stewart cites *Birkner,* 771 P.2d at 1056–59, and *Hodges,* 811 P.2d at 156–57. However, a careful reading of both cases shows no such rule.

¶ 15 As will be explained in more detail below, the *Birkner* court analyzed the history of Utah law to determine when the conduct of an employee falls within the scope of employment. *See Birkner,* 771 P.2d at 1056–59; *see also infra* ¶ 20. As part of that discussion, the *Birkner* court held that to fall within the scope of employment, an employee's purpose or intent to act must be to further the employer's business. *See Birkner,* 771 P.2d at 1057. However, the *Birkner* court also noted that this requirement does not preclude an employer's "liability for the intentional torts of assault, fraud, and defamation." *Id.* at n. 2. This is in direct contradiction to the statement made by Justice Stewart in his *S.H.* dissent.

---

**3.** It is important to note that *D.D.Z.* involved sexual assault and battery rather than assault and battery. It has been noted in dicta of other cases that other jurisdictions do hold that an employee's sexual misconduct falls outside the scope of employment as a matter of law. *See*

*Birkner,* 771 P.2d at 1058. However, this is not the question that we have been asked to rule upon, and therefore, we do not address the issue of whether sexual assault and battery are outside the scope of employment as a matter of law.

¶ 16 Instead, what Justice Stewart may have been referring to was the discussion of sexual misconduct which appears later in the *Birkner* analysis. After applying the three-part test it developed, the *Birkner* court found that reasonable minds could not differ as to the conclusion that the sexual misconduct of the employee was outside the scope of his employment. *See id.* at 1058. When reasonable minds cannot differ, the conduct may be held to lie outside the scope of employment as a matter of law, and therefore, the *Birkner* court held that the sexual misconduct in that case was outside the scope of employment as a matter of law. *See id.* at 1059.

¶ 17 In support of its holding, the *Birkner* court discussed the fact that an employee's sexual misconduct is always outside the scope of employment as a matter of law in some other jurisdictions. *See id.* at 1058. However, this court did not adopt that rule in *Birkner,* and we are not being asked to do so at this time. Moreover, noting that sexual misconduct is outside the scope of employment as a matter of law in some jurisdictions is not the same as saying that the intentional torts of assault and battery are outside the scope of employment as a matter of law in Utah.

¶ 18 Furthermore, there is no discussion in *Hodges* of assault and battery. In discussing the principles of agency law, the *Hodges* court stated that "[t]he law established in *Birkner* is that an employer is vicariously liable for an employee's intentional tort if the employee's purpose in performing the acts was either wholly or only in part to further the employer's business, even if the employee was misguided in that respect." *Hodges,* 811 P.2d at 156. The *Hodges* court then proceeded to extend the *Birkner* rule of vicarious liability for intentional torts to malicious prosecution, noting only that there is no vicarious liability if the employee acts entirely on personal motives unrelated to the employer's interests. *See id.* at 156–57.

¶ 19 As has been demonstrated, each case concerning scope of employment is very complex and must be carefully analyzed in light of the facts present. Intentional torts, including battery, must be subjected to a fact-finding analysis of the employee's conduct in relation to the employment. No justification can be found to separate the intentional tort of battery outside the scope of employment when this court has analyzed scope of employment for sexual battery,[4] sexual abuse,[5] alienation of affections,[6] and fraud.[7] Therefore, the intentional tort of battery is not outside the scope of employment as a matter of law.

## II. WHAT TEST SHOULD BE EMPLOYED TO DETERMINE WHETHER THE INTENTIONAL TORT OF BATTERY IS WITHIN THE SCOPE OF EMPLOYMENT?

¶ 20 This court has already established a three-part test for determining whether an employee was acting within the scope of employment. *See Birkner v. Salt Lake County,* 771 P.2d 1053, 1056–57 (Utah 1989). In that case, we examined Utah law and other legal authorities. The analysis resulted in three basic criteria for determining whether an employee's conduct lies within the scope of employment. These three criteria are that the employee's conduct must (1) "be of the general kind the employee is employed to perform," (2) "occur within the hours of the employee's work and the ordinary spatial boundaries of the employment," and (3) "be motivated, at least in part, by the purpose of serving the employer's interest." *Id.* at 1057.

¶ 21 In *Birkner,* we analyzed whether an employee was acting within the scope of employment when he committed a sexual battery during the course of counseling. *See id.* at 1056–59. In applying the three criteria, we found that even though the sexual misconduct took place within the time and spa-

4. *Birkner,* 771 P.2d at 1056–59.

5. *J.H.,* 840 P.2d at 122–23.

6. *Jackson,* 891 P.2d at 1391–92.

7. *Phillips,* 666 P.2d at 881–83.

tial boundaries of employment, the battery was not the general kind of activity a therapist is hired to perform. *See id.* at 1058. More importantly, the conduct was not intended to further the employer's interest, but was merely to serve the "private and personal interests" of the therapist. *Id.*

¶ 22 Clark contends that we should add an expectability prong to our *Birkner* test, using the fourth element of section 228 of the Restatement (Second) of Agency.[8] The fourth element provides that the use of intentional force by an employee is within the scope of employment only if "the use of force is not unexpectable by the master." Restatement (Second) of Agency: Scope of Employment § 228(1)(d) (1958). However, Clark provides no justification under Utah law to depart from *Birkner.*

¶ 23 While the Restatement is sometimes useful in providing guidance, it is not dispositive of Utah law. The three-part test set out in *Birkner* was carefully considered. This court has observed that the *Birkner* test provides flexibility, enabling it to be applied in various factual situations. *See, e.g., Christensen v. Swenson,* 874 P.2d 125, 128 n. 1 (Utah 1994) (advocating flexible application of *Birkner* criteria to allow consideration of employee's negligent conduct which was technically outside physical boundaries of employment but arguably substantially within ordinary spatial boundaries of employment); *Clover v. Snowbird Ski Resort,* 808 P.2d 1037, 1040–41 (Utah 1991) (noting that dual purpose rule and substantial deviation test are not departures from *Birkner* criteria but merely methods of applying criteria in specific factual situations).

¶ 24 Furthermore, we stated in *Birkner* that "[i]f the employee acts 'from purely personal motives ... in no way connected with the employer's interests' or if the conduct is 'unprovoked, highly unusual, and quite outrageous,'" the conduct should be considered outside the scope of employment. *Birkner,* 771 P.2d at 1057 (quoting W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 70, at 506 (5th ed.1984)).

¶ 25 We believe that "expectability" is already taken into account by applying the three elements of the *Birkner* test while considering that conduct that is "unprovoked, highly unusual, and quite outrageous" should be outside the scope of employment. We can see no justification for deviating from the *Birkner* test. We believe that by applying the test on a case-by-case basis, its flexibility will allow a fair evaluation of whether an employee's conduct can be considered within the scope of employment. Therefore, we hold that the three-part *Birkner* test, as stated above, should be used to determine whether the intentional tort of battery is within the scope of employment.

## CONCLUSION

¶ 26 We conclude that under Utah law, it is possible for the intentional tort of battery to be within the scope of a person's employment. Further, in analyzing whether a battery is within or outside the scope of employment, the three-part test set out in *Birkner* should be applied.

¶ 27 Chief Justice HOWE, Justice DURRANT, Justice WILKINS, and Judge GREENWOOD concur in Associate Chief Justice RUSSON'S opinion.

¶ 28 Having disqualified herself, Justice DURHAM does not participate herein; Court of Appeals Judge PAMELA T. GREENWOOD sat.

---

8.  The three criteria of the *Birkner* test correspond to the first three elements of the Restatement (Second) of Agency § 228(1).