**Michelle LARSON, Plaintiff,**

v.

**SNOW COLLEGE, Lynn Shiffman, Beckie Taylor, Susan Whiting, Bevin Blackham, Gerald Day, Richard Wheeler, Defendants.**

No. 2:99CV1009C.

United States District Court,
D. Utah,
Central Division.

Oct. 12, 2000.

Loren M. Lambert, Arrow Legal Solutions, Midvale, UT, for Plaintiff.

Peter L. Rognlie, Utah Atty's General Office Litigation Unit, Salt Lake City, UT, for Defendants.

## AMENDED ORDER

CAMPBELL, District Judge.

Plaintiff Michelle Larson, a former student at Defendant Snow College, has brought this action against Snow College and various officials of Snow College, including the President, Gerald Day.[1] Larson alleges that while she was a student at Snow College, Defendants violated her civil rights and various federal and state laws.

---

1. The various defendants are sued in the following capacities ("individual defendants" refers to all the individuals except Day, who (as President of Snow College) is treated differently):

1. § 1983 claims: (a) the individual defendants are sued in their *personal* capacities (seeking only damages); (b) Day is sued in his *person-*

The case comes before the court on Defendants' motion to dismiss. The court held a hearing on this motion on June 30, 2000, during which Larson was represented by Loren M. Lambert and Defendants were represented by Assistant Attorney General Peter L. Rognlie. Having fully considered the arguments of counsel, the submissions of the parties and applicable legal authority, the court now enters the following order.

### Background

Larson was a student at Snow College, in Ephraim, Utah, during the 1996–97 academic year. In addition to her academic responsibilities, Larson had been elected student body vice-president. In November and December of 1996, however, Larson experienced mental health problems that required her to seek medical care, be hospitalized, and eventually withdraw from school for two days.

When she returned to school on January 2, 1997, the Defendants required Larson to sign a "Wellness Contract," apparently as a prerequisite to her continued education at Snow College. According to Larson, the Wellness Contract demanded that she (1) cease "crying spells during class official meetings or school activities," (2) sleep a minimum of six hours per day, (3) cease behaviors that "frighten others into calling school officials during evening or nighttime hours," (4) cease "unwelcome invasion of the request by other individual's for privacy," (5) cease "statements of suicide or death wish," and (6) cease making "slanderous comments concerning students, staff, or faculty members of Snow College." (Compl. at 2–3.) As part of the Wellness Contract, Larson was placed on "social probation" and relieved of her student government position. Later, she was placed on "academic probation." (*Id.* at 3.) According to Larson, Defendants used the Wellness Contract as a mechanism to keep her from associating with fellow students and student government officers, to stop her from exercising her free speech rights, and to control her behavior and spy on her while she was in the privacy of her school living quarters. (*See id.* at 5.)

Larson claims that her protests to the individually-named defendants about the way she was being treated went unheeded. (*See id.* at 5.) Although she apparently was given a grievance hearing at some point, she contends that the hearing was inadequate and violated her due process rights and her rights to equal protection. (*See id.* at 6.)

In February 1997, Larson filed a claim with the Department of Education's Office for Civil Rights ("OCR").[2] In a letter to

al and official *capacities (seeking damages and injunctive relief); and (c)* Snow College is not sued.

2. ADA and Rehabilitation Act claims: (a) the individual defendants are sued in their *official* capacities (seeking damages and injunctive relief); (b) Day is sued in his *personal and official* capacities (seeking damages and injunctive relief); and (c) Snow College is sued (seeking damages and injunctive relief).

3. state law claims: (a) the individual defendants are sued in their *personal* capacities (seeking damages and injunctive relief); (b) Day is sued in his *personal and official* capacities (seeking damages and injunctive relief); and (c) Snow College is sued (seeking damages and injunctive relief).

(*See* Compl. at 6–7.)

**2.** In fact, Larry Larson (Plaintiff's father) filled out a form entitled "Title II of the Americans with Disabilities Act/Section 504 of the

Larry Larson (Plaintiff's father) dated October 7, 1997, the OCR detailed how they handled the complaint. (This letter is attached as Ex. C. to Pl.'s Resp. to Defs.' Mot. to Dismiss Compl.). According to the letter, an OCR staff member talked with Defendant Rich Wheeler, Vice President of Student Services at Snow College, and John McAllister, Utah Assistant Attorney General. The letter states that in August 1998, "Wheeler expressed an interest in resolving the allegations by entering into an agreement with OCR." (*Id.* at 1.) In order to resolve the allegations, Snow College sent a Commitment to Resolve ("CTR"), and OCR closed the case. (The CTR, dated Sept. 9, 1998, is attached as Ex. D to Pl.'s Memo. in Opp'n.) The letter indicates that OCR would reopen the case and resume the investigation if Snow College did not complete the CTR as scheduled.

The CTR is a three-page document signed by Defendant Gerald Day, Snow College's president.[3] The document indicates that Snow College would make ten itemizing changes, including halting its practice of issuing Wellness Contracts. (*See* CTR at 1.) It is unclear from the pleadings whether Snow College has violated the CTR or if OCR has reopened the case.

Larson filed a complaint in Utah state court on November 17, 1999, and the case was removed to federal court on or about December 23, 1999. The complaint alleges that Defendants (1) violated her civil rights by depriving her of her right to free speech, depriving her of a property and liberty interest, and subjecting her to unlawful searches; (2) discriminated and retaliated against her because of her disability; (3) breached a contract by relieving her of her duties as vice-president in contravention of Snow College's policies and rules; and (4) invaded her right to privacy by asking her roommates to spy on her while she was in her living quarters.

Larson's complaint seeks injunctive relief (a court order that Snow College be required to comply with the CTR) and money damages (special damages, general damages, and punitive damages).

*Pending Motion*

Defendants move to dismiss the complaint in its entirety pursuant to Fed. R.Civ.P. 12(b)(6) on the grounds that (1) Larson's federal claims are barred by the

---

Rehabilitation Act of 1973 Discrimination Complaint Form" on February 27, 1997. (This document is attached as Ex. A to Pl.'s Resp. to Defs.' Mot. to Dismiss Compl.). Larry Larson sent this document to the U.S. Department of Justice, Civil Rights Division, Disability Rights Section. According to a letter dated September 5, 1997, from Joseph F. Talian, a Civil Rights Division Analyst with the Disability Rights Section, to Larry Larson, the February 27 complaint was forwarded from the U.S. Department of Justice to the Department of Education's Office for Civil Rights ("OCR"), since OCR was deemed to be "the agency that is most likely to investigate [the] allegations." (Letter from Talian to Larry Larson, attached as Ex. B to Pl.'s Resp. to Defs.' Mot. to Dismiss Compl.). OCR apparently received Larry Larson's complaint on or about September 9, 1997. (*See* Letter from J.

Aaron Romine to Larry Larson dated Oct. 7, 1998, attached as Ex. C. to Pl.'s Resp. to Defs.' Mot. to Dismiss Compl.)

3. In an introductory paragraph, the CTR states that it means to resolve the following:

that the College discriminated against the complainant's daughter on the basis of her mental disability by imposing a "wellness contract" on her; that the College removed her from her student government office and placed her on social and academic probation contrary to College policies; that College staff engaged in numerous acts of retaliation, harassment and intimidation of her for her attempts to secure her rights under the ADA; and that the College did not follow its own policy in conducting a grievance hearing.

(*Id.* at 1.)

statute(s) of limitations; (2) Larson's state claims are barred by the Utah Governmental Immunity Act; (3) Larson's claims for compensatory damages under the ADA and the Rehabilitation Act fail to sufficiently plead intentional discrimination; (4) the individual Defendants are immune from suit because of qualified immunity; (5) Larson's § 1983 claims are barred because Snow College and Day are not persons under that statute; and (6) Larson fails to state a contract claim. In addition, Defendants argue that Larson is not entitled to injunctive relief because she is no longer a student at Snow College.

### Discussion

#### A. Federal Claims

Larson alleges three federal claims: violation of (1) 42 U.S.C. § 1983, (2) Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132 ("ADA"), and (3) Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Rehabilitation Act"). Defendants argue that all of Larson's federal claims should be dismissed.

#### 1. Statute of Limitations

■ Defendants first argue that Larson's federal claims are barred by the applicable statute(s) of limitation. Generally, a limitation defense is an affirmative defense and the burden of proof is on the party asserting it. See Goldsmith v. Learjet, Inc., 90 F.3d 1490 (10th Cir.1996).

■ Congress did not provide a specific statute of limitations for claims brought under § 1983, the ADA, or the Rehabilitation Act. See Wilson v. Garcia, 471 U.S. 261, 266, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985) (no statute of limitations under § 1983); Arnold v. Duchesne

County, 26 F.3d 982, 984 (10th Cir.1994) (same); Squire v. United Airlines, Inc., 973 F.Supp. 1004, 1007 (D.Colo.1997), aff'd sub nom Squire v. UAL Corp., 1999 WL 798062 (10th Cir. Oct.7, 1999) (no statute of limitations under the Rehabilitation Act); Nutter v. Wefald, 1992 WL 331292, *7 (D.Kan. Oct.28, 1992), aff'd 1 F.3d 1249 (10th Cir.1993) (same); Allred v. Solaray, Inc., 971 F.Supp. 1394, 1397 (D.Utah 1997) (no statute of limitations under the ADA); Punahele v. United Air Lines, Inc., 743 F.Supp. 758, 759 (D.Colo.1990) (same); accord Holmes v. Texas A & M Univ., 145 F.3d 681, 684 (5th Cir.1998) (no statute of limitations under either Title II of the ADA or under the Rehabilitation Act).[4]

■ The Supreme Court directs that, in the absence of an explicit statute of limitations, a federal court should adopt the "most analogous" or "most appropriate" state statute of limitations. Wilson, 471 U.S. at 268, 105 S.Ct. 1938; Arnold, 26 F.3d at 984. A federal court should adopt only those state limitations period that are not inconsistent with the Constitution and laws of the United States. See 42 U.S.C. 1988(a); see also Wilson, 471 U.S. at 266–67, 105 S.Ct. 1938; Arnold, 26 F.3d at 984.

Defendants direct the court to the two-year limitation period contained in Utah Code Ann. § 78–12–28 (effective May 5, 1997):

An action may be brought within two years:

(1) against a marshal, sheriff, constable, or other officer for liability incurred by the doing of an act in his official capacity, and by virtue of his office, or by the omission of an official duty, including the non-

---

**4.** Larson is incorrect that 28 C.F.R. 35.170(b) is a statute of limitations for claims brought under the Rehabilitation Act and ADA. 28 C.F.R. 35.170(b) refers to the time in which to file an administrative complaint; it does not set a statute of limitations for actions brought under the Rehabilitation Act and ADA. See Roe v. County Comm'n of Monongalia, 926 F.Supp. 74, 77 (W.Va.1996).

payment of money upon an execution;

(2) for recovery of damages for a death caused by the wrongful act or neglect of another; or

(3) *in causes of action against the state and its employees, for injury to the personal rights of another if not otherwise provided by state or federal law.*

*Id.* (emphasis added). Larson contends that the court should instead use the four-year statute of limitations period found in § 78–12–25(3), applicable to those actions for which "relief [is] not otherwise provided for by law." *Mismash v. Murray City,* 730 F.2d 1366 (10th Cir.1984).

### i. Background of Utah Code Ann. § 78–12–28(3)

The pre-amendment version of § 78–12–28(3) provided a two-year statute of limitations "for injury to the personal rights of another as a civil rights suit under 42 U.S.C. § 1983." Utah Code Ann. § 78–12–28(3) (repealed). In 1994, the Tenth Circuit concluded that even if the statute was the "most analogous" state limitations period for a § 1983 action in Utah, it could not be applied since the statute "specifically and exclusively" targeted § 1983 actions and was therefore inconsistent with federal law. *Arnold,* 26 F.3d at 986. Because the pre-amendment version of § 78–12–28(3) discriminated against § 1983 claims, the Tenth Circuit concluded that the statute stood as a mere reflection of "the judgment of the Utah legislature as to what the appropriate limitations period for § 1983 actions should be." *Id.* at 987. The *Arnold* court held:

> Civil rights actions brought in Utah under other sections of the Civil Rights Act are arguably still covered by the residual four-year statute [§ 78–12–25(3) ].... Others suffering personal injuries from residual categories of state law torts (the jurisprudential equals to

§ 1983 plaintiffs ...) similarly enjoy a four-year limitations period. Section 1983 personal injury plaintiffs (i.e., those suffering personal injuries inflicted by someone acting under color of law) alone have been singled out for application of a two-year limitations period.

*Id.* at 988.

After the decision in *Arnold,* the Tenth Circuit, without discussion of the issue, applied the four-year statute of limitations in Utah Code Ann. § 78–12–25(3) for § 1983 claims in Utah. *See Sheets v. Salt Lake County,* 45 F.3d 1383 (10th Cir.1995) (applying § 78–12–25(3) for § 1983 actions); *Smith v. Jessop,* 1994 WL 371511 (10th Cir. July 14, 1994) (same).

In response to *Arnold,* the Utah Legislature amended Utah Code Ann. § 78–12–28(3), effective May 5, 1997. As noted above, the amended statute provides a two-year limitation period "in causes of action against the state and its employees, for injury to the personal rights of another if not otherwise provided by state or federal law." Utah Code Ann. § 78–12–28(3). There are no published opinions considering whether the amended statute is valid, and no published opinions citing this statute after May 5, 1997.

### ii. Retroactive Application of Utah Code Ann. § 78–12–28(3)

A preliminary issue is whether the amended § 78–12–28(3) could apply to Larson's claims at all. In this case, Larson alleges that her rights were violated at various times between January 2, 1997 (the day she returned to school) and June 7, 1997 (graduation day). (*See* Compl. Ex. A.) Since the amendment was not made effective until May 5, 1997, it is not immediately clear that the amended statute would apply retroactively to those events occurring before the effective date.

■ As noted above, the application of a statute of limitation period is determined

by Utah state law. *See Wilson,* 471 U.S. at 268, 105 S.Ct. 1938. Under Utah law, a new limitation period is a procedural change that applies even though it shortens the allowable period for preexisting claims, provided the shortened period allows a plaintiff a reasonable time in which to bring an action. *See Greenhalgh v. Payson City,* 530 P.2d 799, 803 (Utah 1975); *Mann v. Rigtrup,* 1991 WL 99049, *1 n. 1 (10th Cir. June 6, 1991); *Bridgewaters v. Toro Comp.,* 819 F.Supp. 1002, 1006 (D.Utah 1993). Under this interpretation, the new statutory period runs from the effective date of the new enactment, not the accrual date of the cause of action. *See Greenhalgh,* 530 P.2d at 803.

The amended § 78–12–28 provides for a two-year statute of limitations, and that is a "reasonable time," as that concept is discussed in *Greenhalgh. Accord Bridgewaters,* 819 F.Supp. at 1006. Under the laws of Utah, then, the amended version of § 78–12–28 purports to apply to this case and, if applicable, limits Larson's federal civil rights actions to a two-year limitation period.[5]

5. If the amended version applied, Larson's two year window would close on May 4, 1999. This would demand dismissal of Larson's federal claims since she did not file her complaint until November 17, 1999.

6. As discussed above and in *Arnold,* Supreme Court decisions direct federal courts to consider the "most appropriate" or "most analogous" state limitations period. *See Arnold,* 26 F.3d at 986 n. 6. In most cases, a search for the most "analogous" or "appropriate" statute is necessary. Here, by contrast, § 78–12–28(3) is arguably the most "analogous" because it specifically addresses causes of action against the State or State employees. Even if it is the most "analogous," however, it may not necessarily be the most appropriate, in the sense of providing the "most appropriate limiting principle." *Wilson,* 471 U.S. at 268, 105 S.Ct. 1938; *see also Arnold,* 26 F.3d at 986, n. 6.

### *iii. Scope of Utah Code Ann. § 78–12–28(3)*

 Assuming that the amended § 78–12–28(3) is the "most analogous" state limitations period for Larson's federal claims, the next issue is whether the amended statute provides "the most appropriate limiting principle," *Wilson,* 471 U.S. at 268, 105 S.Ct. 1938, and is consistent with federal law and policy. *See Arnold,* 26 F.3d at 985.[6]

 In considering whether § 78–12–28(3) is consistent with federal law and policy, it is important to determine precisely what actions the amended statute intends to limit. Since federal civil rights actions are brought against a state or state employee, it is clear that the amended statute means to limit those federal civil rights claims that do not contain an express statute of limitations. This includes, but is not limited to § 1983 actions.[7] The amended statute does not include state civil rights claims, however, since state civil rights actions are covered by the separate Utah Governmental Immunity Act statute of limitation provisions.[8] Addition-

7. The statute would also appear to include, for example, ADA claims and Rehabilitation Act claims brought against the State or State employees.

8. An aggrieved person wishing to sue the State of Utah or its employees must first file a notice of claim with the State within one year pursuant to Utah Code Ann. § 63–30–12 (Supp.1999):

A claim against the state, or against its employee for an act or omission occurring during the performance of the employee's duties, within the scope of employment, or under color of authority, is barred unless notice of claim is filed with the attorney general within one year after the claim arises, or before the expiration of any extension of time granted under Section 63–30–11, regardless of whether or not the function giving rise to the claim is characterized as governmental.

ally, since the amended statute covers only those claims brought against "the state and its employees," it does not include "generic" personal injury claims brought against ordinary citizens. Those "generic" personal injury suits fall under the residual four-year statute of limitations of § 78–12–25(3). *See Jenkins v. Percival,* 962 P.2d 796, 805 n. 3 (Utah 1998) ("The statute of limitations for filing a personal injury action is four years."). In the end, the amended statute applies only to federal civil rights.

#### iv. Conflict with Federal Law and Policy

#### a. Characterization of Federal Actions

The issue considered here is slightly different from that considered by the Tenth Circuit in *Arnold.* In *Arnold,* the Tenth Circuit considered a state statute that "specifically and exclusively" targeted a *particular* federal civil rights action— § 1983 claims. *Arnold,* 26 F.3d at 987. Here, the amended statute specifically and exclusively targets federal civil rights actions in general.

At the heart of *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), upon which the *Arnold* decision rests, is the Supreme Court's holding that for purposes of selecting proper state limitations periods, the characterization of § 1983 claims is purely a matter of federal, not state, law:

> The characterization of § 1983 for statute of limitations purposes is derived from the elements of the cause of action,

and Congress' purpose in providing it. These, of course, are matters of federal law. Since federal law is available to decide the question, ... § 1988 directs that the matter of characterization should be treated as a federal question.... Congress surely did not intend to assign to state courts and legislatures a conclusive role in the formative function of defining and characterizing the essential elements of a federal cause of action.

*Wilson,* 471 U.S. at 268–69, 105 S.Ct. 1938. The Supreme Court went on to hold that § 1983 actions are (as a matter of federal law) best characterized as claims for personal injuries. *See id.* at 277, 105 S.Ct. 1938.

■ The conclusion that federal law governs the characterization of the federal claim is not limited to claims brought under § 1983. Indeed, courts have consistently held that federal law governs characterization of claims brought under the ADA and the Rehabilitation Act, and that those claims, like § 1983 claims, are best characterized as claims for personal injuries. *See, e.g., Baker v. Bd. of Regents,* 991 F.2d 628, 632 (10th Cir.1993) (characterizing Rehabilitation Act claim as a claim for personal injuries); *Lewis v. Fayette County Detention Ctr.,* 2000 WL 556132 (6th Cir. April 28, 2000) ("[C]ourts faced with ADA or Rehabilitation Act claims have also looked to the state's statute of limitations for personal injury actions."); *Everett v. Cobb County Sch. Dist.,* 138

*Id.* Utah Code Ann. § 63–30–14 (1997) gives the governmental entity ninety days to act on after a notice of claim has been filed. Once the ninety days have passed, a claimant has one year to file a civil action under Utah Code Ann. § 63–30–15 (1997):

> (1) If the claim is denied, a claimant may institute an action in the district court against the governmental entity or an employee of the entity.

> (2) The claimant shall begin the action within one year after denial of the claim or within one year after the denial period specified in this chapter has expired, regardless of whether or not the function giving rise to the claim is characterized as governmental.

*Id.*

F.3d 1407, 1409–10 (11th Cir.1998); (same) *Soignier v. American Bd. of Plastic Surgery,* 92 F.3d 547, 550–51 (7th Cir.1996) (same).

As noted by the Tenth Circuit, "an important ground for the Supreme Court's conclusion that § 1983 actions [and, by analogy, all other federal claims] are properly characterized as personal injury actions was its confidence that such a characterization would 'assure that neutral rules of decision' would be available to enforce them." *Arnold,* 26 F.3d at 987, *quoting Wilson,* 471 U.S. at 269, 105 S.Ct. 1938.

 In enacting the amended statute, the Utah legislature has attempted to apply its own conclusion as to the proper time period in which a federal civil rights plaintiff may pursue her claims. In so doing, the Utah legislature has taken the "complex federal judgment embodied in the borrowing process sanctioned by section 1988 and amplified by federal common law," *Arnold,* 26 F.3d at 987, and replaced it with the State's own judgment of how federal claims should be characterized and what limitation period should apply. The amended statute, in effect, discredits the federal characterization of federal actions by substituting the State's determination that a federal claim should be treated in a certain way. By specifically and exclusively targeting federal actions against the State and State employees, § 78–12–28(3) fails to provide the "most appropriate limiting principle" and therefore conflicts with federal law and policy. *See Arnold,* 26 F.3d at 987.

#### b. Legislative History

The legislative history of § 78–12–28(3) suggests that the amended statute was intended to apply to federal civil rights actions exclusively and supports the conclusion that the amended statute conflicts with federal law and policy. The proposed amendment was first discussed on February 4, 1997, by the House Law Enforcement of Criminal Justice Committee. (*See* Feb. 4, 1997 Tr. filed Sept. 2, 2000.) According to the transcript, the proposed amendment was offered by Representative Steven Barth, but explained to the Committee by Frank Mylar, a representative of the Department of Corrections. (*See id.* at 2, lns. 14–17.) Mylar explained that the new statute "deals with civil rights actions that are causes of action with the state (inaudible).... It is something that we (inaudible) Corrections. Prisoner's lawsuits have been difficult (inaudible)." (*Id.* at 3, lns. 1–3, 15–17.) In response to a question on the meaning of the statute's use of the term "personal rights," Mylar stated the following:

Yeah, that's—it's fairly well defined in federal law as being a civil rights—some kind of a subeither a *statutory civil right in federal law or a constitutional right.* And—but the reason they struck it down is because of the clause that it said (inaudible) "civil rights action under 42 U.S.C. Section 1983," that was one of the reasons they felt like, well, you're really just targeting the civil rights actions too much by naming it.

The second thing that they had a problem with—which is why we have the last clause there in Paragraph 3—"if not otherwise provided by state or federal law"—they had a problem saying, Well, what if Congress has already prescribed a particular statute of limitations for a particular civil right? Hm, they felt like this doesn't have the authority to trump that, so to speak, or supercede that. And so that catchall clause says Okay, if there's a specified statute in any other state or federal law dealing with a civil rights, then that statute will—will apply. This will apply if it doesn't state a particular statute of limitations. *Presently Section 1983, Section 1985, and some other things—some other civil rights actions do not have a statute of limita-*

*tions, so this would apply to the federal—those federal causes of action.*

(*Id.* at 4, lns. 3–25; 5, lns. 1–5) (emphasis added.) Following this short explanation, the Committee voted unanimously to pass the statute. (*See id.* at 6.)

On February 11, 1997, the proposed statute was briefly discussed during the General Session of the State Legislature. (*See* Feb. 11, 1997 Tr. filed Sept. 2, 2000.) During discussion of the proposed statute, Representative Barth stated that the amendment "merely brings us into line with [*Arnold v. Duchesne* ]. It adopts the language suggested by the Court of Appeals in *Arnold* to bring the state—statute of limitations in line with federal requirements when a suit is filed." (*Id.* at 2, lns. 18–23.) The Utah Legislature voted unanimously to pass the amended statute.

While the legislative history is short, the remarks quoted above certainly suggest that the statute was meant to apply exclusively to federal civil rights actions.

### c. Other State Statutes of Limitations

District courts sitting in other states in the Tenth Circuit apply residual statutes of limitations that do not apply exclusively to federal civil rights actions. *See* Kan. State Ann. § 60–513(a)(4) ("An action for injury to the rights of another, not arising on contract, and not herein enumerated."); Okla. Stat. Ann. tit. 12, § 95(3) ("... an action for injury to the rights of another, not arising on contract, and not hereinafter enumerated...."); N.M. State. Ann. § 37–1–8 (".... for an injury to the person or reputation of any person...."); Wyo. Stat. § 1–3–105(C) ("An injury to the

rights of the plaintiff, not arising on contract and not herein enumerated....").

The one exception in the Tenth Circuit is Colorado's residual statute of limitations, which contains a subsection focused exclusively on federal causes of action: "All actions upon liability created by a federal statute where no period of limitation is provided in said federal statute...." Colo.Rev.Stat. § 13–80–102(1)(g). In post-*Arnold* decisions, the Tenth Circuit has applied subsection (g) to § 1983 claims. *See Holmes v. Regents of Univ. of Colo.*, 1999 WL 285826 (10th Cir. May 7, 1999) (applying Colo.Rev.Stat. § 13–80–102(1)(g) without discussion).

The difference between Colorado's residual statute of limitations and Utah Code Ann. § 78–12–28 is that Colorado includes all other personal injury claims in a subsection within the same statute that expressly limits federal civil rights actions. Hence, "All other actions of every kind for which no other period of limitation is provided," including generic personal injury suits against ordinary citizens, are subjected to the same statute of limitation period. Colo.Rev.Stat. § 13–80–102(1)(i). In contrast, plaintiffs bringing "all other actions of every kind for which no other period of limitation is provided" in Utah are entitled to a longer (four year) limitation period codified in a separate statute of limitations. *See* Utah Code Ann. § 78–12–25(3). By separating federal causes of action and placing federal complainants at a disadvantage compared to those plaintiffs bringing an analogous state claim, the amended Utah statute specifically targets and discriminates against federal civil right actions.[9]

---

**9.** Tenn.Code Ann. § 28–3–104(a)(3), mentioned by defense counsel during oral argument, applies to "civil actions for compensatory or punitive damages, or both, brought under the federal civil rights statutes...." In a separate subsection within the same statute, however, the Tennessee statute subjects "Ac-

tions for libel, *for injuries to the person*, false imprisonment, malicious prosecution, breached of marriage promise..." to the same limitation period. Tenn.Code Ann. 28–3–104(a)(1) (emphasis added). Like the Colorado statute, then, Tennessee's statute does not exclusively target federal civil right claims.

### v. Conclusion

In the final analysis, the amended version of § 78–12–28(3) eliminates the process of federal characterization of federal claims and attempts to unilaterally declare that federal civil rights actions have a two-year statute of limitation period. In adopting the amended statute, the Utah Legislature has circumvented the entire process and purpose of borrowing the most appropriate state limitations period and applied its own conclusion about how federal claims should be characterized. For those reasons, the amended statute is, like the pre-amendment statute, contrary to federal law and policy. *See Arnold,* 26, F.3d at 987. Therefore, this court cannot apply the amended statute to Larson's federal claims. *Accord id.* at 986.

In states with multiple personal injury statutes of limitations, courts considering § 1983, ADA, and Rehabilitation Act claims should borrow the general or residual statute for personal injury actions. *See Owens v. Okure,* 488 U.S. 235, 249–50, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989); *Wilson,* 471 U.S. at 276, 105 S.Ct. 1938; *Arnold,* 26 F.3d at 985. As noted above, Utah Code Ann. § 78–12–25(3) is the state residual statute for personal injury actions. All of Larson's federal claims, therefore, fall under the four-year statute of limitation period of § 78–12–25(3). Since Larson filed this action within the four-year window, Defendants' motion to dismiss on the grounds that the claims are barred by the applicable statute of limitations is denied.

### 2. Adequacy of Pleading of Intentional Discrimination for the ADA and Rehabilitation Act Claims

Defendants next argue that Larson's claims for compensatory damages under the ADA and the Rehabilitation Act must be dismissed because she fails to specifically plead intentional discrimination. (*See* Defs.' Reply Memo. at 8.)

The Tenth Circuit has held that intent is required to qualify for compensatory damages under the ADA and the Rehabilitation Act. *See Powers v. MJB Acquisition Corp.,* 184 F.3d 1147, 1153 (10th Cir.1999) (requiring proof of intentional discrimination for compensatory damages under these statutes). To the extent it is required,[10] Larson's complaint adequately pleads intentional discrimination. (*See* Compl. para. 13, "Defendants took action against the plaintiff because they did not want the stigma of an individual representing the school and graduating from the school who had a mental illness"; *id.* para. 16, "Here defendants attempted to use plaintiff's disability as an excuse to silence someone they did not like because she questioned their ideas and authority and had a disability that caused them to be uncomfortable...."; *id.* para. 19, "[D]efendants continued to purposefully retaliate against her [in a number of ways]."; *id.* para. 26, "Defendants took punitive action against plaintiff because of either her classification as disabled, their perception that she was disabled, or her actual disability and then retaliated against her because she and her agents were demanding that defendants cease their discrimination against her.") Accordingly, Defendants' motion to dismiss these claims is denied.

### 3. Qualified Immunity

Defendants next argue that Larson's § 1983 claims against the individual defendants must be dismissed because the individual defendants are entitled to qualified immunity.[11] Under the qualified immunity doctrine, "government officials

---

10. *Powers* appears to endorse the idea that "intentional discrimination is not an element of the plaintiff's prima facie case." *Id.* at 1153. It may be, then, that Larson is required to prove intent, but need not specifically plead it.

11. The defense of qualified immunity would only protect the individual defendants, not

performing discretionary functions are generally shielded from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 817, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *see also Watson v. University of Utah Med. Ctr.,* 75 F.3d 569, 577 (10th Cir.1996).

■■■■ When qualified immunity is raised in a 12(b)(6) motion, the court must apply a "heightened pleading standard," which requires that the complaint contain "specific, non-conclusory allegations of fact sufficient to allow the district court to determine that those facts, if proved, demonstrate that the actions taken were not objectively reasonable in light of clearly established law." *Breidenbach v. Bolish,* 126 F.3d 1288, 1293 (10th Cir. 1997) (affirming dismissal because the allegation in the complaint of a Fourth Amendment violation was "a conclusory statement with no foundation in any specific facts arising from the warrant affidavit on which the claim is predicated" and therefore failed to sufficiently allege a constitutional violation); *but see Dill v. City of Edmond,* 155 F.3d 1193, 1204 (10th Cir.1998) ("reversing dismissal since the complaint adequately stated a First Amendment claim and the law was clearly established."). When raised in a motion to dismiss, of course, a court's review of the qualified immunity defense is limited to the pleadings and the court must "construe the allegations in the complaint and any reasonable inferences to be drawn from them in favor of [the] plaintiff." *See Dill,* 155 F.3d at 1203.

■■■■ In considering whether the individual defendants are entitled to qualified immunity at this stage, the court must determine whether the complaint alleges a valid constitutional claim and then deter-

mine whether the constitutional right was clearly established so that reasonable officials would have understood that their conduct violated that right. *See id.* at 1204.

■■■■ In this case, Larson alleges three constitutional violations: (1) violation of her right to free speech; (2) deprivation of a property and liberty interest; and (3) unlawful search. First, the complaint alleges that "The defendants unlawfully violated plaintiff's civil rights by restricting her free speech with her fellow students and student officers when she spoke out on matters of public concern such as the treatment[ ] of persons with disabilities and landlords violating the law." (Compl. at 7.) The complaint includes two other references to her First Amendment violation allegation. (*See id.* at 4–5, "More specifically, plaintiff started to speak out on the issue of how persons were being treated that had disabilities and plaintiff had spoke out on behalf of tenants whose landlords were in violation of the law or who were abusing their tenants."; *id.* at 5, "[D]efendants used [the Wellness Contract] as a mechanism to keep plaintiff from … associat[ing] with fellow students and student government officers … discuss[ing] the way the defendants were treating her and other disabled persons [and writing] about such things.").

The complaint next alleges a due process violation: "Defendants deprived plaintiff of her liberty and property interest to perform in her elected office and to continue in her studies in violation of plaintiffs' due process and equal protection rights under the United States Constitution." (*Id.* at 7.) The complaint refers to a due process violation in several other places. (*See id.* at 3, Imposition of the Wellness Contract "did not afford plaintiff her due process rights and equal protection rights under the fourteenth amendment."; *id.* at 5, "[D]efendants used [the Wellness Con-

Snow College (or Day in his official capacity). *See Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980);

*Law v. National Collegiate Athletic Assoc.,* 134 F.3d 1025 (10th Cir.1998).

tract] as a mechanism to keep plaintiff from participating in student government and affairs thereof (she was stripped of her office and barred from participating in student government meetings)....”; *id.* at 6, “Plaintiff also attempted to pursue a grievance of her objections to defendants’ actions against her. The grievance hearing was held in such a manner that it violated Snow policies and again violated plaintiff’s due process rights and her rights to equal protection. For instance, the committee met with the persons plaintiff was grieving against both prior to her presentation and after. Consequently, she could not respond to anything that may have been discussed in her absence.”).

The complaint also alleges that Defendants violated Larson’s “rights to privacy and to be free of unlawful search by recruiting her roommates to act under color of State law to surveil her while in her living quarters.” (*Id.* at 7.) The complaint refers to this Fourth Amendment violation allegation one other time. (*See id.* at 5, “[D]efendants used [the Wellness Contract] ... as an excuse to surveil her conduct in the privacy of her school living quarters (defendants asked plaintiffs’ room mates and fellow students to spy on her and report back to them).”).

■ For each of the three claims, the complaint includes only conclusory statements with few specific facts and therefore fails to meet the heightened pleading standard demanded after a qualified immunity defense is raised.[12] When an original complaint is deficient, the plaintiff must amend her complaint to include specific, non-conclusory allegations of fact sufficient to allow the court to determine that “those facts, if proved, demonstrate that the actions taken were not objectively reasonable in light of the clearly established law.” *Breidenbach,* 126 F.3d at 1292. Therefore, Larson’s § 1983 claims are dismissed without prejudice and Larson is granted leave to amend her complaint within twenty (20) days from the date of this order.[13]

### B. State Claims

#### 1. Utah Governmental Immunity Act

■ Larson alleges that the Defendants breached a contract, interfered with economic relations, and invaded her privacy. Defendants contend that these state law claims are barred by the Utah Governmental Immunity Act, Utah Code Ann. §§ 63–30–11, 63–30–12 (Supp.1999) (“UGIA”). The UGIA requires that a

---

**12.** For example, for the First Amendment claim, the complaint does not detail when Larson attempted to speak or how the individual defendants curtailed that speech; for the due process claim, the complaint fails to adequately describe the grievance hearing or its alleged faults; for the Fourth Amendment claim, the complaint does not explain how the individual defendants were involved in the search of Larson’s room. So that Larson is not mislead, the court emphasizes that these are examples of specific facts, and would not necessarily meet the heightened pleading requirement in themselves.

**13.** Defendants also claim that any § 1983 claims brought against Snow College or against defendant Day (Snow College’s President) in his official capacity must be dis-

missed because Snow College and Day are not “persons” under that statute. Larson concedes this point and clarifies that she sues Snow College under the ADA and the Rehabilitation Act, not under § 1983. (*See* Pl.’s Opp’n Memo. at 40.) Larson sues Day in his official capacity and seeks only injunctive relief against him. Larson’s complaint is properly pled. *See Will v. Michigan Dept. of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Roach v. University of Utah,* 968 F.Supp. 1446, 1451 (D.Utah 1997) (holding that individual defendants could be sued for damages under § 1983 in their individual capacities and for injunctive relief in their official capacities).

A complete list of federal claims and defendants is included in footnote one, *supra.*

plaintiff bringing a claim for injury against a governmental entity or employee first provide notice of the claim to the defendant within one year. *See* Utah Code Ann. § 63–30–12 (Supp.1999). Service of proper notice is a jurisdictional requirement and a precondition to suit. *See Madsen v. Borthick,* 769 P.2d 245, 249–50 (Utah 1988); *Nielson v. Gurley,* 888 P.2d 130, 135 (Utah Ct.App.1995). It is undisputed that Larson has not complied with the UGIA notice requirement.

Larson responds that since the Defendants acted with malice, they cannot find a safe harbor under the UGIA. (*See* Pl.'s Opp'n Memo. at 29.) This is incorrect. In *Nielson,* the Utah Court of Appeals rejected this argument, concluding that an exception for cases in which malice is plead would "confuse[ ] the scope of the notice requirement with the extent of substantive sovereign immunity protection." *Nielson,* 888 P.2d at 135. Despite the fact that plaintiff pled malice in *Nielson,* the Utah Court of Appeals found that immunity was not waived and that plaintiff "had to comply with the notice provisions of the Governmental Immunity Act in order to maintain his action. . . ." *Id.* at 135–36.

■ Larson next argues that UGIA's express exception for contract claims requires that the court not dismiss her breach of contract claim. *See* Utah Code Ann. § 63–30–5 (1997) ("Immunity from suit of all governmental entities is waived as to any contractual obligations. Actions arising out of contractual rights or obligations shall not be subject to the requirements of § 63–30–11, 63–30–12. . . ."). Larson is partially correct. Section 63–30–5 waives immunity and the UGIA's notice requirements for "governmental entities" (i.e., Snow College), but not for any

individual employees. *See Nielson,* 888 P.2d at 135. Hence, while the contract claim against Snow College may proceed, any contract claims brought against the individually-named defendants must be dismissed.

In conclusion, then, the court dismisses all of Larson's state claims except the breach of contract claim brought against Snow College.

### 2. Adequacy of the Contract Claim

■ Defendants next contend that Larson fails to adequately state a breach of contract claim because she has "failed to specifically identify any document or provision in a document that could arguably constitute a contract." (Defs.' Reply Memo. at 10.) According to Larson's complaint,

> [D]efendants breached their contract with plaintiff when they relieved plaintiff of her office duties as Vice President, subjected her to "social & academic probation" and imposed a "Wellness Contract," in contravention to Snow's policies, procedures, rules, regulations and constitution. Plaintiff, through an academic scholarship, had paid her tuition and had been abiding by all Snow's requirements. Consequently defendants were in turn required to follow Snow's own policies which represented a contract between the parties.

(Compl. at 8.)

The complaint adequately states a claim for breach of contract. Accordingly, Defendants' motion to dismiss Larson's claim of breach of contract is denied.[14]

### C. Injunctive Relief

■ In Larson's fifth claim, she seeks injunctive relief, requiring Snow College to

---

**14.** While the complaint adequately states a claim for breach of contract, Larson's opposi-

tion to the motion to dismiss further explains her argument:

"comply with all the recommendations made by" OCR. (*Id.* at 9.) Larson is no longer a student at Snow College, and she has not articulated any valid reason that would entitle her to this injunctive relief. Hence, Larson's claim for injunctive relief is dismissed.

### Conclusion

Defendants' motion to dismiss is GRANTED in part and DENIED in part. Specifically, the court (1) GRANTS Defendants' motion to dismiss Larson's § 1983 claims without prejudice with leave to amend in order to satisfy the heightened pleading requirement demanded after a defense of qualified immunity is raised; (2) DENIES Defendants' motion to dismiss Larson's ADA and Rehabilitation Act claims; (3) DENIES Defendants' motion to dismiss Larson's breach of contract claim against Snow College and (4) GRANTS Defendants' motion to dismiss Larson's other state law claims.[15]

When a student enrolls in College, he or she pays tuition either through personal money or scholarship money. The student agrees to comply with the College's academic and ethical rules and the College contracts to provide the student with its particular education regimen and to grant the student all of the other concomitant rights and services offered to all of its students—such as participating in student government.
. . .
Here Snow made a contractual offer of enrollment to plaintiff through its own published policies, rules, regulations, and constitution. These documents delineated the contractual rights, privileges and duties that the student and college would have upon the plaintiff's acceptance and payment of tuition for enrollment. The promises made in these publications were Snow's consideration to plaintiff. Plaintiff, based upon this offer, was accepted and enrolled as a student. Plaintiff through an academic scholarship paid her tuition. This was her consideration under the contract.
. . .
Through its agents, by removing her from her elected office and in placing her on academic and social probation, [the College] breached its contract with her.

(Resp. to Defs.' Mot. to Dismiss Compl. at 28–29.)

15. Accordingly, Larson is left with the following claims: (1) ADA and Rehabilitation Act claims against (a) the individual defendants in their official capacities, (b) Day in his personal and official capacities, and (c) Snow College; and (2) a breach of contract claim against Snow College. Larson may seek only damages, not injunctive relief, for each of the claims. Larson is given leave to amend her complaint to plead a § 1983 claim in conformity with this order.